### McKELVEY et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1921.)

No. 3622.

1. **Public lands** &#8859;21—**Preventing person from crossing unoccupied lands by use of firearms prohibited by statute.**

> Act Feb. 25, 1885, § 3 (Comp. St. § 4999), providing that no person by force, threats, intimidation, or by fencing or inclosing, etc., shall prevent or obstruct any person from entering upon and establishing a settlement on public lands subject to settlement, or prevent or obstruct free passage or transit over public lands, is not limited to acts amounting to an occupancy of the lands or to the obstruction of intended settlers, but applies to the obstruction of free passage to persons driving a band of sheep, by using firearms to intimidate them from crossing unoccupied lands.

2. **Public lands** &#8859;21—**Penalty for obstructing passage not limited to owners or agents.**

> Act Feb. 25, 1885, § 4 (Comp. St. § 5000), providing that any person violating the provisions of that act (relating to the obstruction of free passage over unoccupied public lands), whether as owner, part owner, or agent, or who shall aid, abet, etc., any violation, shall be guilty of a misdemeanor, is not limited to owners, part owners, or agents, but applies to one who with no pretended claim of right or ownership, by threats and intimidation, prevents another from driving stock across public lands.

&#8859;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Criminal law ⬤➔437—Township plats held admissible on trial for obstructing passage across public lands.**

On a trial for preventing and obstructing free passage across public lands by force and intimidation, official plats of townships in which the lands in question were situated were competent to prove the lands were public lands, though a part of such townships were privately owned.

**4. Public lands ⬤➔21—Evidence sufficient to support conviction for preventing and obstructing passage.**

On a trial for preventing and obstructing free passage over unoccupied public lands by force, threats, and intimidation, evidence *held* sufficient to sustain a verdict as against all the defendants convicted.

**5. Public lands ⬤➔6—Statute prohibiting prevention of free passage held valid.**

Act Feb. 25, 1885, § 3 (Comp. St. § 4999), so far as it prohibits the prevention and obstruction of free passage over unoccupied public lands, is valid, under Const. art. 4, § 3, authorizing Congress to make all needful rules and regulations respecting the territory or property belonging to the United States.

**6. Indictment and information ⬤➔111(3)—In indictment for obstructing passage over public lands, proviso need not be negatived.**

Under Act Feb. 25, 1885, § 3 (Comp. St. § 4999), providing that no person by force, etc., shall prevent or obstruct free passage over public lands, provided that this shall not affect the right or title of persons improving or occupying such lands and claiming title thereto in good faith, the proviso is not a component part of the definition of the offense, and need not be negatived in an indictment.

In Error to the District Court of the United States for the Eastern Division of the District of Idaho; Frank S. Dietrich, Judge.

Charles McKelvey and others were convicted of preventing and obstructing free passage over unoccupied public lands, and they bring error. Affirmed.

Chase A. Clark and Solon B. Clark, both of Mackay, Idaho, for plaintiffs in error.

J. L. McClear, U. S. Atty., and J. R. Smead, Asst. U. S. Atty., both of Boise, Idaho.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge. Defendants below brought writ of error to review their conviction of having prevented and obstructed free passage over and through certain described public unoccupied lands of the United States; the obstruction being accomplished by force, threats, and intimidation. The indictment charged that the defendants did—

"willfully and unlawfully, by means of force, threats, and intimidation and other unlawful means, prevent and obstruct certain persons * * * from having and enjoying free passage over and through certain public unoccupied land of the United States of America, to wit: * * * That they * * * did then and there forcibly and unlawfully make an assault with firearms * * * upon the said * * * who were then and there attempting peaceably to pass over and through said aforesaid public lands of the United States, and did then and there threaten to injure the said * * * if they should not then and there desist in passing and attempting to pass over and through said public land, * * * or should endeavor again to go upon said public lands, all of which things were done' * * * for the purpose of prevent-

ing and obstructing the said * * * from passing over and through the said public lands, and by means of which said forcible assaults and threats the said * * * did then and there intimidate the said * * * and did then and there force them to desist from passing on, over, and through said public land," etc.

There was evidence that about August 25th certain men in charge of some bands of sheep were driving them down on the left side of Big Lost river toward Mackay, Idaho; that some of the defendants, Lehman and Warren, told the man in charge of the sheep that they would have to move, as it was a cattle range; that the sheep men told the defendants that they would have to get orders from the owners of the sheep; that later that day defendant Bates told the sheep men to move right away, and with others who were armed made threats and demonstrations of force. On the morning of the 26th defendant Bates went to the sheep camp and asked the man in charge of the sheep if they were going to move. The sheep man replied that they were going on the side of the river they were on toward the trail they always used between the ranches and the forest reserve, whereupon defendant Bates said they could not go through there. Thereupon Bates told the sheep man something would happen to him. Later Tom Donahue (who was discharged on motion of the United States attorney), McKelvey, Warren, and one other, met the sheep men, and E. Donahue, T. Donahue, McKelvey, and another scared the horses of the sheep men, rode into camp, and told the sheep men to hold up their hands. The men obeyed. The visiting party commenced to shoot, and wounded one of the sheep men. Further threats were then made by Emmet Donahue and Bates and Lehman. Some of the defendants then ordered the sheep men to pack the horses and move everything, sheep and men. The sheep men then drove the sheep down across the river.

According to the plats of the land office, and as testified to by the register of the United States Land Office at Haley, Idaho, the land where the trouble occurred was public land not entered, and the land over which the sheep men proposed to drive the sheep was vacant and unentered public land, lying between a forest reserve and certain occupied lands in the river valley.

[1] The question of the sufficiency of the indictment is presented by a contention that the act charged does not come within the scope and meaning of section 3 of the Act of Congress of February 25, 1885, entitled "An act to prevent unlawful occupancy of the public lands" (23 Stat. 321 [Comp. St. § 4999]), and that the indictment does not negative the proviso contained in section 3 of the act of Congress referred to. By section 1 of the act (Comp. St. § 4997) it is provided:

"All inclosures of any public lands * * * heretofore or to be hereafter made * * * by any person, * * * to any of which land included within the inclosure the person * * * making or controlling the inclosure had no claim or color of title made or acquired in good faith, or an asserted right thereto, by or under claim, made in good faith with a view to entry thereof at the proper land office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is hereby forbidden and prohibited; and the assertion of

a right to the exclusive use and occupancy of any part of the public lands, without claim, color of title, or asserted right as above specified as to inclosure is likewise declared unlawful, and hereby prohibited."

Section 2 (Comp. St. § 4998) makes it the duty of the district attorney to proceed in the cases where it is brought to his attention that section 1 of the act is being violated. Section 3, under which the indictment is drawn, provides:

"No person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct, or shall combine and confederate with others to prevent or obstruct, any person from peacefully entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands: Provided, this section shall not be held to affect the right or title of persons, who have gone upon, improved or occupied said lands under the land laws of the United States, claiming title thereto, in good faith." 23 Stat. 322.

Section 4 (Comp. St. § 5000) provides that "any person violating" the provisions of the act, "whether as owner, part owner, agent, or who shall aid, abet, counsel, advise, or assist in any violation * * * shall be deemed guilty of a misdemeanor," etc.

It is argued that the only acts prohibited by the act are those of occupancy of the public lands "which amount in fact to an inclosure," and that the acts condemned must in effect amount to a public nuisance, as distinguished from a private nuisance, except that under section 3 it is unlawful for any person to prevent or obstruct any other person from going upon the public land to establish a residence or settlement under the land laws.

Our opinion is that the act under which the conviction was had is broader in its purpose than plaintiffs in error regard it. The clauses of section 1 are limited to inclosures, or to what are in effect inclosures; but section 3 lays down a rule of conduct that no person, by himself or in combination with others, shall prevent or obstruct any person not only from peaceably entering upon any tract of public land, but that no person shall prevent or obstruct free passage or transit over or through the public lands, except as provided, where entry has been made under the land laws in good faith.

It is proper to recall that at the time the act was passed the general policy of Congress was in recognition of an implied license that, until the government might object, the public lands adapted to live stock growing and not held under claim of title should be free for all persons to pass over and through. Buford v. Houtz, 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618. The act may therefore be regarded as expressive of the determination of Congress to preserve that policy by making (section 1) the physical thing, an inclosure of the public lands, unlawful; by prohibiting the maintenance, erection, construction, or control of such inclosure; by prohibiting the assertion of right to the exclusive use and occupancy of any part of the public land without claim or color of title as to the inclosure; by prohibiting (section 3) any person by force, threats, or intimidation, or by fencing or in-

closing, from preventing or obstructing any one from peaceably going upon the public lands or settling thereon under the land laws; by prohibiting any person from preventing or obstructing free passage or transit over the public lands.

It seems clear that if one not himself in good faith claiming a right under the land laws, or not in lawful authority, by the use of firearms intimidates a person and orders him not to cross over the unoccupied public lands, he obstructs free passage over such lands, and so violates the provisions of section 3 of the law, and is liable to any punishment, if any has been provided by the penalty provision, which is section 4.

[2] Section 4 should not be construed too narrowly or in a way to nullify the words which make the section applicable to any person who violates the provisions of the act or who aids and abets in any violation thereof. In providing that "any person" who violates any provision of the act, "whether as owner, part owner or agent," is to be deemed guilty, the legislative body did not intend to restrain the applicability of the generality of the words "any person" to such only as are specifically enumerated, as would have been the case if the clause contained the videlicet which is used to limit or qualify the generality of the preceding term. Voegthy v. School Directors, 1 Pa. 330. As the evident intent of the whole act was to protect the public lands, in order that persons might lawfully occupy or pass over them, it is not to be supposed that one who has no pretended claim of right or ownership or agency can by threats and intimidation prevent one from driving stock across the public lands, and yet escape liability upon the ground that he is excluded as not within the enumerated classes, although he comes within the general category of any persons violating the act. The Supreme Court in Ash Sheep Co. v. United States, 252 U. S. 159, 40 Sup. Ct. 241, 64 L. Ed. 507, has recently said:

"The admitted rule that penal statutes are to be strictly construed is not violated by allowing their words to have full meaning, or even the more extended of two meanings, where such construction best harmonizes with the context, and most fully promotes the policy and objects of the Legislature."

In Omaechevarria v. Idaho, 246 U. S. 343, 38 Sup. Ct. 323, 62 L. Ed. 763, cited by plaintiffs in error, no decision was had upon a statute preventing passage over the public lands; nor did the Supreme Court analyze section 3 of the act here involved. The opinion emphasizes the fact that the Idaho statute there discussed makes no attempt to grant a right to use public lands, "but merely excludes sheep from certain ranges under certain circumstances," and was a valid exercise of police power by the state. If the case has any relevancy to the present controversy, it is in the fact that the court regarded the entire act as showing that part of section 1 sought to prohibit the assertion of an exclusive right of way or occupation by force or intimidation or by what would be equivalent in effect to an inclosure. From such a standpoint, the opinion by Justice Brandeis might be cited in support of an argument that, even under a very restricted construction, one who without claim of right and with arms intimidates another who is driving stock across the public lands, and compels him to seek another route,

is in effect asserting a right of control or of qualified ownership of right to use part of the public lands.

[3] The register of the United States Land Office testified concerning certain official plats of townships in which the public lands in question were situated. We think they were competent as tending to prove whether the particular lands described in the indictment were public lands of the United States or had been entered and were private. The fact that a part of two townships shown upon the plats was owned privately did not affect the competency of the testimony with respect to the lands described in the indictment and related to the case on trial.

[4] Nor is there substantial ground for the contention that the evidence failed to show that the defendants, nor any of them, were connected with the offense charged. The evidence amply sustains the verdict as against all who were convicted.

[5] The constitutionality of that portion of section 3 of the act under which the indictment was found is questioned upon the ground that it not only covers cases which it is within the power of Congress to act upon, but also cases in which Congress has not the power to act upon. But the question presented by the record pertains to the power of Congress to pass the statute which prohibits the doing of the things charged against plaintiff in error. To that there can be but one answer. That Congress can exercise control over the public lands is thoroughly well established. Section 3, art. 4, Constitution. And surely Congress may exercise power necessary for the protection of the public lands, including as an incident the prosecution and punishment of persons who obstruct passage or transit over the public lands. Light v. United States, 220 U. S. 535, 31 Sup. Ct. 485, 55 L. Ed. 570.

[6] Plaintiffs in error assail the indictment as fatally defective, because it did not negative the proviso contained in section 3 of the act. The proviso, however, is not a component part of the definition of the offense; hence it was not necessary to negative the proviso. United States v. Cook, 84 U. S. (17 Wall.) 168, 21 L. Ed. 538; Ledbetter v. United States, 170 U. S. 606, 18 Sup. Ct. 774, 42 L. Ed. 1162; Robertson v. United States (C. C. A.) 262 Fed. 948; Stetson v. United States, 257 Fed. 689, 168 C. C. A. 639; Jelke v. United States, 255 Fed. 264, 166 C. C. A. 434; Grand Trunk R. Co. v. United States, 229 Fed. 116, 143 C. C. A. 392, Ann. Cas. 1917B, 1094.

We find no error in the record, and affirm the judgment.