## NIXON et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   May 21, 1923.)

No. 3976.

1. **Conspiracy ☞30—In prosecution for conspiracy to oppress homesteader, validity of mortgage executed before title vested in homesteader immaterial.**

In a prosecution for conspiracy to injure, oppress, threaten, and intimidate a homesteader in his right and privilege to hold and enjoy a homestead claim under the United States law, it is unnecessary to determine the validity of a mortgage made by the homesteader before final proof or before entry, since the utmost that can be claimed in favor of such mortgage is that the lien of the mortgage will attach when title has passed from the United States, but until such title passes the mortgage is a nullity, which can affect neither the title of the United States nor the homesteader's right of possession.

2. **Public lands ☞7—Right of entryman wholly dependent on acts of Congress.**

Under Const. art. 4, § 3, Congress is vested with the exclusive right and power to dispose of and make all needful rules and regulations respecting the public domain of the United States, and the right of a homestead entryman to enter and settle on the public domain and acquire title by compliance with the homestead laws is wholly dependent upon the acts of Congress.

3. **Conspiracy ☞30—Homesteader's exercise of rights and privileges within protection of federal law.**

The right of an entryman on public lands under the homestead laws to protection in the free exercise of the rights and privileges secured to him by the Constitution and such laws is guaranteed by Criminal Code, § 19 (Comp. St. § 10183), punishing conspiracy to injure persons in the exercise of civil rights, and whenever the acts complained of are designed to prevent such homesteader from exercising such rights and privileges, or to throw obstructions in the way of their exercise, or to injure or oppress a person because he has exercised it, such acts are within the statute and the constitutional power of Congress to make such statute; the entryman's right being one asserted under the law of the United States and granted by that law.

4. **Criminal law ☞1172(7)—Instruction in conspiracy more favorable than defendants were entitled to.**

In a prosecution for conspiracy to interfere with the enjoyment of rights and privileges of a homestead entryman on public lands, where the defendants claimed under a mortgage made prior to final proof, the defendants cannot complain of instructions submitting the issue of defendants' good faith in the various proceedings by which they sought to oust such homesteader; such instructions being more favorable to them than they were entitled to have given, as the court might well have charged the jury that none of the instruments under which defendants claimed authorized any interference with the possession of the homestead of claimant until after final proof.

5. **Criminal law ☞372(6)—Testimony of similar acts by defendants prior to date of alleged conspiracy admissible.**

In a prosecution for conspiracy to injure a person in the exercise of his civil rights as a homestead entryman, the government is not bound by the date of the conspiracy as laid in the indictment, and testimony as to various acts of intimidation and oppression committed by the defendants prior to the date of the alleged conspiracy was properly admitted, and was competent to explain and give color to similar acts committed by the same parties at a later date.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Conspiracy ⬤�longdash47—Evidence held sufficient to warrant conviction for conspiracy to interfere with homesteader's rights.**

In a prosecution for conspiracy to injure a homestead entryman in the exercise of his rights, evidence that defendants, claiming as purchasers at a foreclosure sale of a mortgage executed by the homestead claimant before final proof, did everything in their power, even to the point of ousting him from possession, to prevent him from consummating his entry by final proof, and that they resorted to legal proceedings, and procured several writs of assistance, and forced the homestead entryman to defend his possession in various courts, *held* sufficient to warrant their conviction under Criminal Code, § 19 (Comp. St. § 10183).

In Error to the District Court of the United States for the Eastern Division of the District of Idaho; Frank S. Dietrich, Judge.

S. M. Nixon and Earl L. Nixon were convicted of conspiracy, and they bring error. Judgment affirmed.

The indictment in this case was returned under section 19 of the Criminal Code (Comp. St. § 10183), and charges a conspiracy on the part of the defendants to injure, oppress, threaten, and intimidate one Sherman, a citizen of the United States, in the free exercise and enjoyment of rights and privileges secured to him by the Constitution and laws of the United States, namely, the right and privilege to hold, use, and enjoy a homestead claim entered by him under and pursuant to such laws. A brief statement of certain facts having little bearing upon the conspiracy charge becomes necessary to a proper understanding of the exceptions to the charge of the court:

On March 1, 1906, Sherman conveyed a large body of land in Fremont county, Idaho, to the State Savings Bank of Butte, Mont. This conveyance, through inadvertence or otherwise, included the homestead claim now in question, which was then unsurveyed public lands of the United States. On May 20, 1915, Sherman applied to the proper land office to make homestead entry of this land, and on September 28, 1915, his application was allowed. On September 22, 1916, at the suit of the receiver of the State Savings Bank, a state court of Idaho declared the deed of March 1, 1906, a mortgage and decreed a foreclosure thereof. On October 28, 1916, the receiver, as purchaser at the foreclosure sale, received a certificate of sale from the sheriff, and on November 20, 1917, the certificate was assigned to the plaintiff in error, S. M. Nixon. On July 9, 1918, the sheriff executed a deed to Nixon as assignee. Thereafter Nixon procured several writs of assistance from the state court to place him in possession of the homestead claim, each of which was later quashed by the Supreme Court of the state. On the last appeal, decided since the trial in the court below, the Supreme Court held that the deed or mortgage and the decree of foreclosure were utterly void as to the homestead claim. Williams v. Sherman (Idaho) 212 Pac. 971. The court charged the jury in substance that whether a homestead claimant can make a valid mortgage of his claim before final proof is a debatable question, and "you will consider that statement of the status of the legal question as bearing upon the good or bad faith of the defendants."

Again, in reference to the different writs of assistance, the court said: "I may say to you, in order that you may more intelligently pass upon the question as to whether or not Nixon, in applying for this writ, was acting in good faith, you may consider his own testimony as to the circumstances and as to the advice of counsel, etc., and further that the district judge of the state district court in which this foreclosure decree had been entered and out of which the writ of assistance issued, the district judge, upon being advised of the situation, sustained the validity of the writ, declined to quash it. On appeal to the Supreme Court, the action of the district judge was reversed, and the court there held that the writ was improperly issued. Now, I say that because, as I have already suggested, the mere fact that a litigant or a claimant to property or a claimant to the right to certain assistance of the

---

⬤�longdashFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court, may make a mistake, is not to be charged against him in a case of this character. It is a question of good faith. And you may consider the view of the district judge and the view of the Supreme Court, one opposed to the other, in determining whether or not he did have reasonable ground to apply for the writ, and whether or not under all of the circumstances of the case, including this difference of opinion between the judges and the courts, whether or not he did act in good faith, or whether, as charged in the indictment, he acted in pursuance of, and as part of, this conspiracy to intimidate, with the intention of harassing and oppressing and intimidating Mr. Sherman until he should get off of the homestead."

These instructions were duly excepted to. Testimony as to acts committed by the defendants prior to the date of the conspiracy as laid in the indictment was admitted over objection, and an exception allowed. The sufficiency of the testimony to warrant a verdict of guilty was challenged by motion for a directed verdict, but the challenge was denied. These several rulings are assigned as error. A verdict of guilty was returned as to the two Nixons, and a verdict of not guilty as to the remaining defendant. The judgment on this verdict is now before us for review.

W. H. Witty, of Pocatello, Idaho, for plaintiffs in error.

E. G. Davis, U. S. Atty., and McKeen F. Morrow, Asst. U. S. Atty., both of Boise, Idaho.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1–3] The court below did not deem it necessary or proper to determine the question of the validity of a mortgage of a homestead claim before final proof or before entry, as in this case, nor do we find it necessary to concern ourselves with that abstract question. The utmost that can be claimed in favor of such a mortgage is that the lien of the mortgage will attach as soon as the title has passed from the United States, as in the case of any other after-acquired title. But so long as the title remains in the United States the mortgage is a mere nullity, and can affect neither the title of the United States nor the right of possession of the homestead claimant, which is derived from and dependent upon the laws of the United States. As said by the court in United States v. Waddell, 112 U. S. 76; 5 Sup. Ct. 35, 28 L. Ed. 673:

"The right assailed, obstructed, and its exercise prevented or intended to be prevented, as set out in this petition, is very clearly a right wholly dependent upon the act of Congress concerning the settlement and sale of the public lands of the United States. No such right exists or can exist outside of an act of Congress. The Constitution of the United States, by article IV, section 3, in express terms vests in Congress 'the power to dispose of and make all needful rules and regulations respecting the territory or other property of the United States.' One of its regulations—the one under consideration—authorizes a class of persons, of whom Lindsey is one, to settle upon its land, and, on payment of an inconsiderable sum of money and the written declaration of intent to make it a homestead, he is authorized to reside there. By building a house and making other improvements on it, and residing there for five years consecutively, which, under the statute and under that alone, he has a right to do, and paying the fees to the officer necessary to its issue, he acquired a patent or title in fee to the land. But his title is dependent on continued residence of himself or family. By the original entry he acquires the inchoate, but well-defined, right to the land and its possession, which can only be perfected by continued residence, possession, and cultivation for five years. His right to continue this residence for five years for that purpose, is dependent upon the act of Congress. His right to the patent, after this is done, rests exclusively on the same foundation.

"The right here guaranteed is not the mere right of protection against personal violence. This, if the result of an ordinary quarrel or malice, would be cognizable under the laws of the state and by its courts. But it is something different from that. It is the right to remain on the land in order to perform the requirements of the act of Congress, and, according to its rules, perfect his incipient title. Whenever the acts complained of are of a character to prevent this, or throw obstruction in the way of exercising this right, and for the purpose and with intent to prevent it, or to injure or oppress a person because he has exercised it, then, because it is a right asserted under the law of the United States and granted by that law, those acts come within the purview of the statute and of the constitutional power of Congress to make such statute. In the language of the court in Ex parte Yarbrough: 'The power arises out of the circumstance that the function in which the party is engaged, or the right which he is about to exercise, is dependent on the laws of the United States. In both of these cases it is the duty of that government to see that he may exercise this right freely, and to protect him from violence while so doing, or on account of so doing.'  *  *  *

"It would indeed be strange if the United States, under the constitutional provisions we have cited, being the owner of unsettled lands larger in area than the most powerful kingdoms of Europe, and having the power 'to dispose of and make all needful rules and regulations respecting this territory,' cannot make a law which protects a party in the performance of his existing contract for the purchase of such land, without which the contract fails, and the rights, both of the United States and the purchaser, are defeated."

See, also, Williams v. Sherman, supra.

[4, 5] In the light of these authorities, the court below might well have charged the jury that neither the deed to the Savings Bank, the decree of foreclosure, nor the deed from the sheriff gave a right of possession to the homestead claim, or authorized any interference whatever with the possession of the homestead claimant by writ of assistance or otherwise until after final proof. Because the instructions fell short of this, the plaintiffs in error have no just cause for complaint. Testimony as to acts committed by the plaintiffs in error prior to the date of the alleged conspiracy was properly admitted. The government was not bound by the date of the conspiracy as laid in the indictment, and the testimony was clearly competent to explain and give color to similar acts committed by the same parties at a later date.

[6] The testimony was ample to support the verdict. The record shows that the plaintiffs in error interfered in divers ways with the homestead claimant in his possession of the homestead claim even to the extent of ousting him from that possession. From a legal point of view their acts in this regard are inexplicable, because, as already stated, they could not even hope to acquire title to the homestead claim through the purchase at foreclosure sale, unless title first became vested in the homestead claimant; yet they did everything within their power to forestall that consummation. The inference would seem to be that they had little faith in their mortgage claim, and hoped to acquire title to the property in some other way, or by some other means; but whether their acts were ill-advised or malicious, or whatever their motive, the testimony is ample to sustain the conviction, and the judgment of the court below is accordingly affirmed.