### JANES v. UNITED STATES, and three other cases.

(Circuit Court of Appeals, Eighth Circuit. May 14, 1925.)

Nos. 6609–6612.

**1. Public lands ⊛21—Evidence of statement held insufficient to connect defendants with notice to leave.**

Testimony that one of defendants had said to witness, "I understand there has been a notice left for P. to leave," was insufficient to place on such defendant, much less on the others, responsibility for the notice, contained in an unsigned note found at P.'s gate.

**2. Public lands ⊛21—Elements of offense of interfering with entryman stated.**

The offense of interfering with an entryman is made up of a criminal intention to interfere with exercise of his rights as such and of acts done in execution of that intention, and whether the acts are committed on or away from the homestead is immaterial, provided there is the requisite criminal intention to so interfere.

**3. Public lands ⊛21—Acts held insufficient to show intent to interfere with entryman in exercise of rights as such.**

The right to graze sheep on public domain not being peculiar to a homestead entryman,

but being open to all, and attack on his sheep not being made till they were miles from his homestead and on land regarded by cattlemen as cattle range, such attack, with evident motive of preventing sheep from grazing on cattle range, was no evidence of the criminal intent necessary for the offense of interfering with an entryman.

In Error to the District Court of the United States for the District of Colorado; T. Blake Kennedy, Judge.

Ray Janes, David Karren, William Jones, and Frank Barry were each convicted of conspiracy, and they separately bring error. Reversed and remanded for new trial.

N. Walter Dixon, of Denver, Colo. (John R. Clark, of Meeker, Colo., on the brief), for plaintiffs in error.

John A. McCann, Assistant U. S. Atty., of Denver, Colo. (George Stephan, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before STONE, Circuit Judge, and MUNGER and MILLER, District Judges.

STONE, Circuit Judge. These are separate writs of error by four men convicted under one indictment for conspiracy to injure, oppress, threaten and intimidate James E. Price in the free exercise and enjoyment of his rights as a homesteader of public land located in Moffat county, Colo.

Several alleged errors are presented to this court but we find it necessary to determine but one of them to dispose of the writs. It is claimed that the evidence was insufficient to warrant submission of the case to the jury. The entire evidence has been read and carefully considered. That Price was a homesteader and entitled to protection as such is unchallenged. He had lived upon his homestead for two years and a half without interruption or molestation. With the exception of one small misunderstanding which was satisfactorily adjusted and had nothing to do with his land entry, he had had no trouble with any of the defendants until the early morning of July 31, 1920. A son-in-law, Durnell, lived on Price's homestead land and they had common business. In the same general neighborhood, William Bascom had a ranch upon which was a flock of sheep. In June, 1920, Price, Durnell and Bascom entered into a contract concerning the care of this flock. Durnell was to herd the sheep, Price was to accumulate winter feed for them. They were to be ranged during the summer and brought to Price's homestead for the winter. Price and Durnell were to be paid at the rate of $100 a month, when they worked, of which sum $80 a month was to be withheld and applied upon the price of 25 sheep sold by Bascom to them. In June, the three men started with the flock from Bascom's ranch. At that time, it totaled 1,856 sheep and lambs of which Price and Durnell owned 43 (the 25 bought from Bascom and 18 brought from the homestead). The flock was started in the direction of a "squatter" claim, belonging to Durnell. Being warned of the danger of taking sheep into that part of the country, because it was claimed as cattle country, the flock was turned back and herded in the vicinity of the Bascom ranch for about a month. They were then moved over to Price's homestead where they were kept for three or four days. Then they were started to a range on the west end of Blue Mountain, 12 or 15 miles distant as the sheep were to be driven. The sheep were driven over to and along the upper part of Blue Mountain and at the end of 4 or 5 days had gone about 5 miles from the homestead. All of that part of Blue Mountain was public land used as open summer range by the cattlemen. At that place and about 3 o'clock in the morning of July 31, 1920, while Price and Durnell were encamped in charge of the flock, 11 mounted men made an attack. Durnell was killed and the sheep were scattered, a number being brutally killed or maimed. Price recognized two of the defendants, Ray Janes and William Jones.

[1] About 15 days after the killing, Price found an undirected unsigned note just inside of his gate leading to the public road. This note was a warning to leave. The evidence does not show that any of the defendants had any knowledge of the note unless it be Jones. One witness testified that Jones had said to her, "I understand there has been a notice left for Mr. Price to leave." This testimony (denied by Jones) was not sufficient to place responsibility for the notice upon Jones, much less upon the other defendants. Thus eliminating the notice, leaves the attack upon the sheep and the killing of Durnell as the only overt acts evidencing the alleged conspiracy or acts in pursuance thereof. Are those sufficient to support the charge?

[2] This offense of interfering with an entryman is made up of a criminal intention to interfere with the exercise of his rights as such and of acts done in execution of that intention. The acts so done may be as varied as the ingenuity of the accused can devise. They may be perpetrated on the homestead or away from it. A threat to an entry man

to harm him if he would not abandon his homestead would be as effective and as criminal if made a hundred miles from the homestead as it would be if made in the center of the homestead. The mere fact that these sheep were attacked and Durnell killed on public land five miles from the homestead would not prevent such acts from being criminal and an interference with Price's rights as an entryman, if they were perpetrated with the requisite criminal intention to so interfere. On the other hand, a personal assault upon Price in his house on the homestead would not constitute such interference if the motive thereof had no connection with his rights as an entryman. The criminal intention required to be present as a necessary element in the unlawful interference with an entryman is an intention to interfere with his exercise of the rights of an entryman. The rule is laid down by the Supreme Court in United States v. Waddell, 112 U. S. 76, 80, 5 S. Ct. 35, 37, 28 L. Ed. 673, where, in discussing this statute (Criminal Code, § 19 [Comp. St. § 10183]), the court says:

"Whenever the acts complained of are of a character to prevent this, or throw obstruction in the way of exercising this right, and for the purpose and with intent to prevent it, or to injure or oppress a person because he has exercised it, then, because it is a right asserted under the law of the United States and granted by that law, those acts come within the purview of the statute and of the constitutional power of Congress to make such statute."

Also, see Roberts v. United States, 283 F. 960 (this court); Montoya v. United States, 262 F. 759 (this court); Nixon v. United States, 289 F. 177 (9th C. C. A.); McKelvey v. United States, 273 F. 410 (9th C. C. A.); Foss v. United States, 266 F. 881 (9th C. C. A.).

The evidence here is sufficient to connect two of the defendants (Janes and Jones) and possibly a third (Karren) with the attack and killing.

[3] In our judgment, the evidence fails to show any intent in any of these defendants to interfere with Price in the exercise of any of his rights as an entryman. The right to graze sheep on the public domain is not peculiar to a homestead entryman but is open to all. An interference with such right is not at all necessarily connected with the rights of an entryman in any way. It is entirely possible to interfere with such grazing right without intending any interference with the rights of an entryman as such, or even without having such rights in mind.

Such, we think, is the effect of the evidence here. That evidence is that for 2½ years Price had lived upon his homestead without the slightest molestation; that this flock of sheep had been herded near the Bascom ranch and on or near Price's homestead for more than a month without the least interference; that there was a bitter feeling by cattlemen against the running of sheep on ranges regarded by them as cattle ranges; that the Blue Mountain was so regarded; that there was this feeling regarding the Blue Mountain range; that Bascom and Price knew of this feeling; that Price and Durnell had only forty-three sheep and lambs in the flock of 1,856; that there is no showing that any of defendants knew that any of the flock belonged to either; that the sheep were killed and maimed with no regard to ownership. In short, all of the evidence (for the prosecution as well as for the defense) is convincing that the sole motive in the attack and killing was to prevent sheep grazing on cattle range. The ownership of the sheep had not the slightest thing to do with the matter.

The crimes of murder and of destruction of property were committed and deserve condign punishment, but they are different crimes than any covered by this indictment and cannot be tried or punished thereunder.

The judgments must be and are reversed and the cases remanded for new trial.