BOARD OF SUPERVISORS, WARREN COUNTY, v. VICKSBURG HOSPITAL, INC.

(Division A. Sept. 23, 1935. Suggestion of Error Overruled Oct. 21, 1935.)

[163 So. 382. No. 31832.]

Wm. I. McKay, Leonard E. Nelson, and R. M. Kelly, all of Vicksburg, for appellant.

C. L. Katzenmeyer and Brunini & Hirsch, of Vicksburg, and Rush Knox, of Jackson, for appellee.

**McGowen, J.,** delivered the opinion of the court.

The board of supervisors of Warren county appeals to this court from the judgment of the circuit court setting aside an order of the board of supervisors assessing the real and personal property of the Vicksburg Hospital for taxation. The court below heard the case without the intervention of a jury, and held that the property, real and personal, of the Vicksburg Hospital, was, by statute, exempt from taxation.

Prior to December, 1933, the Vicksburg Hospital was a corporation, duly chartered under the laws of the state with a capital stock of seventy-five thousand dollars, which appears to have been issued and paid in. The major portion of the stock was owned by physicians who constituted the management and a part of the staff

of the hospital. In December, 1933, the stockholders, at a call meeting, passed a resolution amending their charter, which amendment was subsequently approved by the duly authorized officers of the state. The actual amendment, as approved, is as follows:

"The Purpose for which the corporation is created is to operate a general hospital for the treatment of diseases of the human body, and may provide, build, equip and maintain operating rooms for the purpose of performing surgical operations and may maintain and operate X-ray machines and other machines, appliances used by the medical profession necessary to operate a modern hospital, and may organize, conduct and carry on a training school for nurses, and may provide a course of study and prescribe a curriculum, which if completed and complied with, may graduate said student nurses and issue certificates of graduation or diplomas thereto, and to this end may buy, equip, and maintain real estate for the purpose of providing a home for said student nurses.

"Provided, however, that all of the income and revenue derived from the operation of said hospital and training school for nurses, be used and appropriated exclusively, for the maintenance and operation of the said Vicksburg Hospital, Incorporated, and that none of said proceeds or receipts so had and received by the said Vicksburg Hospital, Incorporated, and, or, the training school for nurses, be used or paid out as a profit or dividend to said stockholders."

Subsequent to the charter of incorporation of the hospital, its owners secured a charter from the state for the Vicksburg Hospital training school for nurses. There was to be no capital stock in this corporation, no shares of stock, and its purpose was to organize and maintain a training school for nurses and to provide the necessary rooms and equipment for the conduct of such school.

We think it fair to make the further statement that

several physicians were the principal owners of the stock of the Vicksburg Hospital; that they had offices therein, and that they, with some other physicians, constituted themselves a clinic. They charged patients who came to the hospital for their services as physicians. The corporation charged separately for the service rendered by the hospital, such as is usually charged by hospitals. The physicians called themselves a clinic, and, by agreement between themselves, each individually rendered service as a physician, charged his patient therefor, and the money received therefrom was placed to the credit of the clinic and disbursed to the several physicians participating therein, according to their agreement, the ratio of percentage being different.

It is shown that Dr. Parsons, one of the incorporators, earned about eighteen thousand dollars a year. These physicians had their offices in the hospital, their patients came there, and they had the use of the hospital building, grounds, furniture, appliances and fixtures, and no charge was made by the hospital against them. Doctors Knox and Parsons were required to superintend and supervise the hospital and generally manage all of the affairs of the hospital, for which they were paid, jointly, one hundred dollars a month. The fees collected by the physicians were deposited in a clinical fund and distributed to the several physicians proportionately, according to their agreements, and the fees collected for the hospital were separately collected and accounted for. The record shows that for the six years preceding the trial of this cause in the lower court, the hospital had lost twelve thousand dollars. The evidence is to the effect that the extra time required of the physicians in the management exacted by the hospital was not compensated for by the privileges granted to them by the hospital in the use of its building and equipment.

There is an agreement in the record that the Vicksburg Hospital owned the nurses' home used in connec-

tion with the hospital. There is no showing that the board of supervisors ever made any effort to assess separately the nurses' home. Two wards, one for white patients and the other for colored, were devoted to the use, call, and treatment of charity patients, and such patients were received and treated and no charge made therefor, and the services of its staff of physicians were furnished without charge. If these wards were filled with patients, emergency charity patients were received and cared for in a ward provided for patients who paid for hospital services.

The proof is uncontradicted that the Vicksburg Hospital lost money and had never made any profit from the beginning of its operation, that all the receipts of the hospital were expended upon the maintenance and operation of it. The precise question presented for decision here is: Under the existing controlling statutes, was the real and personal property of the Vicksburg Hospital exempt from taxation?

The statute controlling is section 3108, Code 1930, subsections (d) and (f), which we set forth for convenience in full:

"(d) All property, real or personal, belonging to any religious society or ecclesiastical body and/or any congregation thereof or to any charitable society, and used exclusively for such society and not for profit, not exceeding however the amount of land which such religious society may own, as provided in the chapter on corporations. All property, real or personal, belonging to any college or institution for the education of youths, used directly and exclusively for such purpose, provided that no such college or institution for education of youth shall have exempt from taxation more than six hundred and forty acres of land. All property, real or personal, owned and occupied by a fraternal and benevolent organization when used by such organization and from which no rentals or other profits accrue to

the organization, but any part rented or from which revenue is received shall be taxed. . . .

"(f) All property, real or personal, whether belonging to religious or charitable or benevolent organizations, which is used for hospital purposes, and nurses' homes where a part thereof, and which maintains one or more charity wards that are for charity patients, and where all the income from said hospital and nurses' home is used entirely for the purposes thereof and no part of the same for profit."

Subsection (f) was substantially amended in 1930, but prior to that time, it was practically in the same form as it appears in section 4251, Code 1906.

The contention of the appellant, the board of supervisors, is as follows: (1) That the property must belong to a religious, charitable, or benevolent organization; (2) that the property must be used for hospital purposes; (3) that the organization must maintain one or more charity wards; (4) that all the income from the hospital and nurses' home must be used entirely for the purposes of the hospital and nurses' home, and no part of the same for profit. The appellant further laid down the propositions that in determining this question (a) the rule of strict construction is applied against tax exemptions; (b) under any construction of the statute, the nurses' home is clearly subject to taxation; (c) under any construction of the statute, the hospital is clearly operated for profit—for the profit of the clinic; (d) effect must be given to the whole statute and every part of it, and words therein contained can be considered neither as surplusage, nor as meaningless, nor can words be interpolated therein; (e) only a religious, charitable, or benevolent organization is entitled to the exemption.

The only serious question presented to us as we view the record and briefs of counsel is: Does the statute include only religious, charitable, or benevolent organiza-

tions in the exemptions granted in subsection (f), section 3108, Code 1930?

We are in agreement with appellant that this statute allowing an exemption from taxation must be strictly construed against the exemption, and that the Vicksburg Hospital has the burden of showing the right thereto. and all reasonable doubt must be resolved against it. It is likewise true that in so construing an exemption statute the courts will not so interpret it as to bring about unthought-of results nor ascribe to the legislature the intention to be unfair and unjust. Leaf Hotel Corporation v. City of Hattiesburg, 168 Miss. 304, 150 So. 779.

The court below was warranted in finding as a fact that the Vicksburg Hospital had complied with the provisions of the amendment to its charter, and that it maintained. in good faith, two wards for charity patients, and that all income from the hospital and nurses' home was used entirely for the purposes thereof, and no part of the same for profit. It is true in this case that physicians composing the clinic no doubt profited by their association with and close relation to the hospital, but it is also true that the record shows that the members of the clinic, an unorganized partnership, rendered services which more than compensated the hospital for the privileges granted the several members thereof.

The statute quoted. supra, was recommended to the legislature by the code commissioners, and is found as section 2865, subsection (f), dummy code; and the language adopted is that of the code commissioners.

The difficulty presented by the argument is the meaning of the language "All property. real or personal, whether belonging to religious or charitable or benevolent organizations, which is used for hospital purposes," etc.. and. in order to sustain appellant's contention we must hold that the words "whether belonging to religious or charitable or benevolent organizations." are a limitation and restriction of the words "All property, real or person-

al," etc. Subsection (f), as it was prior to 1930, has been construed by this court not to include those hospitals which from time to time treat charity patients where the care of such patients is not their principal purpose, but those which take care of and treat patients for pay. See Mayor and Aldermen of City of Vicksburg v. Vicksburg Sanatorium, 117 Miss. 709, 78 So. 702.

Subsection (d) of the statute here involved granted an exemption to charitable, religious, and benevolent societies or organizations whose property was devoted exclusively to this purpose of the organization. Subsection (f), however, in our opinion, by the use of the words "whether belonging to religious or charitable or benevolent organizations," intended to make sure that the limitation as to the exclusive requirement in subsection (d) should not apply to religious, charitable, or benevolent organizations which complied with and met the requirements in subsection (f), in other words in our opinion the legislature desired to make sure that by construction these organizations should not by the terms of subsection (d) be excluded from the benefits conferred by subsection (f). As we have said, the legislature evidently desired to be just. For many years the legislature had been appropriating money to municipally and privately owned hospitals whether or not operated for profit upon the compliance of such hospitals with certain conditions imposed by the legislature for the unfortunate citizens who needed charity hospitalization. We might say that the legislature by this action, since 1920, has made the care of this class of the state's citizens a public purpose.

The legislature adopted chapter 186, Laws 1928, which granted an exemption of all permanent hospitals from taxation where one or more charity wards were maintained that had been constructed before the first day of February, 1930. It is very likely that the legislature, in order to procure charity wards in hospitals for the

treatment of the state's citizens entitled to charity, from private hospitals, intended and wanted to put those already in existence on something of equality as to maintenance with those hospitals which had already been constructed under the act of 1928, and that in 1930 the change was made in subsection (f) in order to be just to those private hospitals operated for profit existing prior to 1928.

The word "whether" neither in common parlance nor legal phraseology has the force of a videlicet; and it is clear to us that the code commissioners and the legislature did not use that word with the intention of limiting the broad language which included all property, real or personal, used for hospital purposes, as a videlicet or as a limitation, but if they had so intended, the words, "viz., to-wit," would have been used, or the word "whether" omitted and the words "All property, real or personal, belonging to religious, charitable, or benevolent organizations" would have been stated. In order to hold that there is a limitation on the broad language of the statute, we must define "whether" as a videlicet, which is not permissible.

The Standard Dictionary defines "whether" used as an adverb: "As the first alternative: introducing a direct alternative question with a correlative or; sometimes introducing a direct simple question, the correlative being implied or lost sight of;" as a conjunction: "As the first alternative; in case; if; introducing an alternative clause, followed by a correlative or, or or whether; sometimes also introducing a single alternative, the other, usually negative, being implied; as tell us whether you are going (or not)."

In a legal sense "whether" is defined: "Which of two or several; which of two alternatives, expressed by a sentence or the clause of a sentence, and followed by 'or.' The word is used as a pronoun, and also as a particle expressing one part of a disjunctive question

in opposition to the other. Word never has the force of videlicet either in common parlance or legal phraseology." 68 C. J. 254. In the note to the above quotation, the case of Voegtly v. Alleghany Third Ward School Directors, 1 Pa. 330, 331, is cited. The reasoning of that case is conclusive that we cannot construe the word "whether" to be a videlicet. The word "videlicet" is "derived from the Latin 'videre,' to see, and 'licet,' it is permitted; a kind of interpreter; a name given to the phrase 'to-wit.' Its natural and proper use is to particularize that which is before the general; and its common office is to state, time, place or manner which are of the essence of the matter in issue, but it may be, and frequently is, used as particularizing the more general antecedent matter." 67 C. J. 244; Sullivan v. State, 67 Miss. 346, 7 So. 275. So that we conclude that the word "whether" in this statute was not intended as a videlicet in opposition to the sensible construction of the use of the word, but that it meant, in the sense used, to include the three classes of organization which followed it, so that there might be no question but that they were embraced in the broad language.

To illustrate: Suppose this clause had read, "All property, real or personal, whether belonging to religious organizations which are used for hospital purposes," etc., the use of the word "whether" there is equivalent to "whether or not." And if the legislature had in fact written the words "or not," these words would have only emphasized or stressed or defined the word "whether" as written in the statute. To define the meaning of a word in the manner authorized by the lexicographer is not to interpolate. The alternative here is not religious or charitable or benevolent organizations, but the ownership of real or personal property. We think, therefore, the legislature intended to exempt those hospitals which came within the terms of subsection (f).

It is contended that because the physicians made a

profit out of the professional services by them in the hospital, the hospital should be subject to taxation. The case of Bristline v. Bassett, 47 Idaho, 66, 272 Pac. 696, 62 A. L. R. 323, is not on all fours with this case. The statute there under consideration is substantially our subsection (f) as it existed prior to its amendment in 1930; and the proof is undisputed here that the services of the physicians rendered to the hospital were given by a surrender of their time to it, the value of which was in excess of the benefit granted the physicians. There is no proof in the record that the management of the clinic was anywise changed after the charter was amended so as to devote all the profits to the purposes of the hospital. The clinic was operated afterwards, as it was before that time, and we think the Bristline case has no application here.

It is insisted that at any rate the nurses' home should now be assessed by this court. We do not find any warrant for so doing in this record. There was no separation of the nurses' home from the hospital or demand to separately assess the nurses' home on the part of the board of supervisors, nor does the matter appear to have been raised in the lower court.

We are of the opinion, therefore, that the Vicksburg Hospital has brought itself within the meaning and terms of subsection (f) of section 3108, Code 1930, and that the court below properly held that its property was exempt thereunder.

Affirmed.