NEW ENGLAND HOSPITAL FOR WOMEN AND CHILDREN *vs.*
CITY OF BOSTON.

Real estate purchased by an incorporated charitable institution, upon which, as soon as purchased, the corporation begins, and until the assessment of the tax complained of, is diligently proceeding to erect a building to be occupied for the purposes for which it was incorporated, is, under Gen. Sts. *c.* 11, § 5, *cl.* 3, exempt from taxation.

CONTRACT to recover back a tax paid under a written protest. Writ dated October 2, 1872.

The case was heard in the Superior Court upon an agreed statement of facts, from which it appeared that the plaintiff corporation was a benevolent and charitable institution, incorporated by Sts. 1863, *c.* 77; 1871, *c.* 186, for the purposes of establishing and maintaining a hospital for the treatment of the diseases of women and children, and of giving therein clinical instruction to female students of medicine, and of training nurses; for which purposes it had power to take and hold real estate not exceeding in value $150,000, and personal estate not exceeding in value the same amount; that April 13, 1871, a committee of the corporation, duly appointed to procure a lot of land for the purpose of erecting a hospital thereon for the purposes specified in the charter, reported that they had purchased a lot of land on Codman Avenue, in Boston, for such purposes; that April 25 the lot was conveyed to the corporation for $18,600; that April 15 an architect had been employed to prepare plans and specifications for the hospital; that some days before May 1, 1871, he viewed the lot of land to locate the hospital, and May 8, sent in his plans to the plaintiff; that the plans having been approved, the architect, May 27, staked off the lot preparatory to digging for the foundation; that thereafter the work of building the hospital was prosecuted with due diligence; that it was completed and occupied by patients long prior to the commencement of the action; that the plaintiff had never leased the premises, and had derived no profit whatever from them, and that they had never been occupied by any other parties; that the plaintiff corporation, May 1, 1871 and for many years prior thereto, occupied a building as a hos-

pital, and for the other purposes for which it was incorporated, in the city of Boston, which was May 1, 1871, and had been since May 1, 1865, exempted from taxation; that the plaintiff corpora- tion did not May 1, 1871, or prior thereto, occupy the lot of land, except as above stated, but did, at that date, occupy for the pur- poses for which they were incorporated, the estate situated on Warrenton and Pleasant Streets, in Boston, which was in the taxation of the year 1871, and for several years prior thereto, exempted from taxation; that the value of the real estate on Cod- man Avenue, and on Warrenton and Pleasant Streets, together, was less than $150,000; that May 1, 1871, a tax of $325.88 was assessed on the lot of land on Codman Avenue by the defendant city, and the same not having been paid, a summons from the defendant was issued to the plaintiff, and thereupon the tax was paid by the plaintiff, under a protest in writing duly made.

In the Superior Court judgment was ordered for the plaintiff, and the defendant appealed.

*J. L. Stackpole*, for the defendant, was first called upon. The point to be determined is whether the lot of land owned by the plaintiff corporation was " occupied by them or their officers for the purposes for which they were incorporated," May 1, 1871, so that it was on that day exempt from taxation under the pro- visions of Gen. Sts. *c.* 11, § 5. It is not a question of the extent to which lands are required for charitable uses, or what uses may best promote the purposes of the institution; but it is a question whether, at a certain date, any such use existed at all. It is plain the " occupation " contemplated by the statute must have a date when it commences and when it terminates. It is con- tended by the city that the " occupation " had not yet com- menced. " The liability of an individual to be taxed for any specific property is decided by the relation he bears to it that pre- cise day." *Holmes* v. *Taber*, 9 Allen, 246, 247. Many of the facts as to the plaintiff's use of the property subsequent to May 1, 1871, are consequently quite immaterial. The plaintiff's relation on that day was simply that of owner, the same as that of any other owner. Few, if any, persons purchase land without a view to occupation. Nor would a prudent person purchase a valuable

city lot without consulting an expert on its capacity for building. This corporation can claim no advantage in this respect over an individual. The language used by the Legislature is not " purchased," or " owned," or " seised," but " occupied." Occupation is ownership, with a present active use. The corporation was merely intending to occupy ; so far as occupation was concerned, that was a future relation, not a present one. As for any relation which the corporation bore to the land on May 1, it might have employed it for any use, or sold it the next day. The fact that it did sell it the next day, or that it erected a hospital the next day, are equally immaterial in determining its liability to taxation. The policy of the law with reference to charities is merely to exempt the instrument of the charity while it is occupied in charitable work; not to exempt it before such occupation begins or after it terminates. It appears that there was already one estate exempted from taxation, used by the corporation for the purposes for which it was incorporated. This was the only estate entitled to be exempted. The present estate was entitled to no exemption until the corporation moved into it, and began to use it for charitable purposes. The other estate was occupied, this unoccupied. It may be said this is too strict a construction of the statute. But the language of the Supreme Court of Ohio in a similar case is here applicable. " It is said in behalf of the appellants that this law should be liberally construed in favor of the institution, its object being to promote science and literature. We think, however, that all laws that exempt any of the property of the community from taxation should receive a strict construction. All such laws are in derogation of equal rights. The money necessary to support government has to be raised by a tax on the beneficial pursuits of community ; it all is raised from the proceeds of industry. If property employed in one kind of business is exempted from taxation, the burden will necessarily fall more heavily on property employed in other pursuits. It is hard to discover why those employed in producing what feeds and clothes humanity should not be regarded as favorably by government as those engaged in the more elegant or intellectual arts. There is no one source of oppression or injustice which has been

productive of so much human misery all over the world, and in all ages of it, as the discrimination which governments, in imposing their burdens, have made between the different occupations of life, encouraging one at the expense of another." *Cincinnati College* v. *State*, 19 Ohio, 110, 115.

*T. F. Currier*, for the plaintiff, was not called upon.

GRAY, C. J. The facts agreed show that the plaintiffs, at the date of the assessment of this tax, had recently purchased the land in question for the purpose of establishing and maintaining a hospital thereon, and were diligently proceeding with the preliminary measures necessary to the erection of the same. The land must therefore be deemed to have been then occupied by them for the charitable purposes for which they were incorporated, and as such exempted from taxation by the Gen. Sts. *c.* 11, § 5, *cl.* 3. *Judgment for the plaintiff.*