## BOARD OF SUP'RS OF HINDS COUNTY *v.* JACKSON HOSPITAL BENEV. ASS'N.

(Division A. Nov. 22, 1937.)

[177 So. 27. No. 32975.]

**H. V. Watkins** and **Ralph B. Avery**, of Jackson, and **W. W. Pierce**, Assistant Attorney-General, for appellant.

Harry M. Bryan, of Jackson, for appellee.

W. E. Morse, of Jackson, amicus curiae.

**Smith, C. J.**, delivered the opinion of the court.

The appellee is a corporation without a capital stock, chartered under chapter 100, Code 1930 (section 4130 et seq., as amended). The validity of its charter is not challenged; nor are any of its provisions, one of which is, ''The purpose for which this corporation is created is to own and operate a hospital in the City of Jackson, Mississippi, for the care of the sick, injured and infirm and others needing hospital care. No profit or gain shall be made from the operation of said hospital or in any other manner. There shall always be maintained one or more charity wards for charity patients, and all income from the said hospital shall be used entirely for the purposes thereof, and no part of same shall be used for profit.'' It owned land in the city of Jackson, Hinds county, upon which there are two buildings; one used for

a hospital, and the other for a nurses' home, on which it was assessed for state and county taxes, the assessed value thereof being $58,000. Objection was made to this assessment by the appellee before the Board of Supervisors of Hinds County, the ground of which is that the appellee's property is exempt from taxation under paragraph (f), section 3108, Code 1930, as amended by Laws 1932, chapter 289. The board overruled this objection and approved the assessment, and an appeal was taken to the court below. The appellee there admitted that its nurses' home was subject to taxation, and, by agreement, a judgment was rendered approving the assessment in so far as it covered that property, which was valued for that purpose at $12,000. The case was then tried on the appellee's claim to an exemption from taxation on its hospital. The parties agreeing, the case was tried by the judge, without a jury, who rendered a judgment allowing the claimed exemption and setting aside the assessment on the appellee's hospital.

Paragraph (f), section 3108, Code 1930 (as amended by Laws 1932, chapter 289), is as follows: ''All property, real or personal, whether belonging to religious or charitable or benevolent organizations, which is used for hospital purposes, and nurses homes where a part thereof, and which maintains one or more charity wards that are for charity patients, and where all the income from said hospital and nurses' home is used entirely for the purposes thereof and no part of the same for profit.'' If the appellee maintained ''one or more charity wards that are for charity patients'' and does not appropriate any of its income to profit, but appropriates all of it to hospital purposes, its claim for an exemption from taxation on its hospital should be allowed. While there is some discrepancy in the evidence of the appellee relative thereto, the court below was warranted in believing that it devotes four of its beds to charity patients and receives and cares for a small number of such patients; and we do not understand counsel for the appellant to claim

that this provision of the statute was not complied with. So we come at once to whether the appellee's hospital was operated for profit.

The evidence discloses, in substance, that in November, 1933, the Jackson Infirmary, a corporation, owned the property here in question, including the nurses' home, which it used for a hospital and nurses' home, on which there was a deed of trust securing bonds to the amount of $37,000 that had been issued by it. On the 24th day of that month, a meeting was held in which the officers and stockholders of the Jackson Infirmary participated, and resolved to organize a corporation to be known as "Jackson Hospital Benevolent Association for the purpose of operating a charitable hospital in the City of Jackson, Mississippi." A charter therefor was then prepared, and on the next day was approved in accordance with section 4131, Code 1930. The incorporators, all of whom were stockholders of the Jackson Infirmary, accepted the charter and organized by electing a president, vice-president, secretary and treasurer from their number.

On the 25th day of the same month, at a meeting of the directors of the Jackson Infirmary, the following resolutions were passed: (1) Authorizing the issuance of bonds of the corporation to the amount of $37,000, secured by a deed of trust on the hospital and nurses' home of the corporation, the proceeds of which to be applied to the payment of the $37,000 of bonds hereinbefore set forth; (2) that "all the property belonging to this corporation be sold to the Jackson Hospital Benevolent Association, the consideration of said sale to be that the said Jackson Hospital Benevolent Association assume all of the outstanding debts of this corporation;" (3) that bonds of the corporation in the sum of $102,330 be issued, secured by a second deed of trust on the corporation's hospital and nurses' home to be exchanged "for the outstanding stock of this corporation on the basis of $150.00 of second mortgage bonds for one share of stock, pro-

vided that in the case of preferred stockholders, $190.00 'of bonds be exchanged for one share of such preferred /stock.'' On the 28th day of the same month, a meeting of the stockholders of the Jackson Infirmary adopted resolutions the effect of which is to approve these resolutions by its board of directors. All of these bonds were issued. The proceeds of the $37,000 bond issue were applied to the payment of the corporation's bonds for that amount which had been theretofore issued and had matured. The bonds of the $102,330 issue were delivered to the stockholders of the Jackson Infirmary in accordance with the resolution so providing, and they surrendered their stock therein.

The minutes of a meeting of the incorporators of the Jackson Hospital Benevolent Association held on December 27, 1933, recite that:

''The committee which was appointed at the November 24th meeting to make recommendations about the construction or acquisition of a hospital to carry out the purposes of the Association made its report. They reported that they had looked into the matter from the ·standpoint of acquiring a lot and building a hospital and also of purchasing a hospital already in operation; that they had found that the Jackson Infirmary and all of its assets and good will could be acquired by assuming the indebtedness against it; that this indebtedness was represented by a first mortgage bond issue of $37,000.00 and a second mortgage bond issue of $102,330-.00. They recommended that the Association buy the Jackson Infirmary and to continue to operate it under that name.

''Upon motion duly made, seconded and carried, the recommendations of the committee were adopted and the purchase of the Jackson Infirmary by the Association on the terms of taking over all of the assets of same and assuming the liabilities was ordered.''

Thereafter the Jackson Infirmary executed a deed to the land on which this hospital and nurses' home was

situated, to the Jackson Hospital Benevolent Association, the consideration of which is "One Dollar ($1.00) cash in hand paid, and the assumption of and agreement to pay by the grantee herein all of the outstanding debts of the grantor, whether open accounts or secured debts." Whether the Jackson Infirmary owed any debts other than the bonds hereinbefore set forth does not appear. The Jackson Hospital Benevolent Association then entered into possession of the property and thereafter used the property for a hospital and a nurses' home.

It is said by counsel for the appellant that the capital stock of the Jackson Infirmary, fixed by its charter, is $75,000. The charter of the Jackson Infirmary was not introduced in evidence, and we find no reference in the evidence to the amount of its capital stock; but, as this statement by counsel for the appellant is not denied by counsel for the appellee, we will assume that it is verified by the record. The value of the property sold by the Jackson Infirmary to the Jackson Hospital Benevolent Association, other than that at which it was assessed for taxation, does not appear. Eighty per cent. of the $102,330 bond issue is now owned by the appellee incorporators who now constitute the governing board, none of whom receive any compensation for services as such. It is clear from the evidence that this hospital is operated by the appellee primarily for the care of patients who pay therefor, and that the care of charity patients is but an incident thereto and is neither sought nor encouraged.

The contention of counsel for the appellant that this hospital is operated for profit is based on two facts: (1) The stockholders of the Jackson Infirmary, who formerly owned and operated it, simply changed the character of their investment from stock in that corporation on which they received, or were entitled to receive, dividends to interest-bearing bonds of the appellee, and they now receive in the form of interest practically what they would have received as dividends on their corporate stock; and (2) that the incorporators of the appellee

corporation, who are now operating the hospital, were officers, directors, and stockholders of the Jackson Infirmary. We are unable to say that these facts negative appellee's claim that its hospital is not operated for profit.

Under the statute, a hospital claiming the exemption, thereunder granted, may be operated for profit to this extent: That its income may exceed its expenses, provided all of the income is devoted to hospital purposes. To what extent its income would be permitted to exceed its expenses is not before us on this record. In order for us to hold that the appellee's hospital is being operated for profit, it would have to appear that profit was in fact made and was for the benefit of its incorporators, or of persons to whom they paid it. The income of the appellee other than that allocated to its current expenses is being used to liquidate a debt incurred by it in the purchase of its property, which debt it had the right to incur, and, therefore, to pay. If the evidence disclosed that the income of the appellee is being applied to the payment of the debts fictitious in whole or in part, or that the value of the property purchased by it, including the good will of the Jackson Infirmary from which it was purchased, was so much less than what the appellee agreed to pay for it as to challenge the good faith of the purchase, a different question would be presented, on which, of course, we express no opinion.

The New Jersey cases cited by counsel for the appellant seem to sustain their contention here; but if so, we are unable to follow them; and Senter v. City of Tupelo, 136 Miss. 269, 101 So. 372, is not here in point.