[L. A. No. 20610. In Bank. Aug. 18, 1950.]

CEDARS OF LEBANON HOSPITAL (a Nonprofit Corporation), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

[L. A. No. 20611. In Bank. Aug. 18, 1950.]

QUEEN OF ANGELS HOSPITAL (a Nonprofit Corporation), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

[L. A. No. 20613. In Bank. Aug. 18, 1950.]

THE HOSPITAL OF THE GOOD SAMARITAN (a Nonprofit Corporation), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

[L. A. No. 20614. In Bank. Aug. 18, 1950.]

MONTE SANO FOUNDATION (a Nonprofit Corporation), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

[L. A. No. 20615. In Bank. Aug. 18, 1950.]

HUGH K. WALKER et al., as Trustees, etc., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

[L. A. No. 20616. In Bank. Aug. 18, 1950.]

LUTHERAN HOSPITAL SOCIETY OF SOUTHERN CALIFORNIA (a Nonprofit Corporation), Plaintiff and Appellant, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

Faries & McDowell, Wayne R. Hackett, Musick, Burrell & Ingebretsen, Philip C. Jones and James E. Ludlam for Plaintiffs and Appellants in L. A. Nos. 20615 and L. A. 20616.

Harold W. Kennedy, County Counsel, Andrew O. Porter, Deputy County Counsel, Ray L. Chesebro, City Attorney, Hugh H. MacDonald and Louis A. Babior, Deputy City Attorneys, for Defendants and Appellants.

Leonard G. Ratner, Joseph Scott, J. Howard Ziemann, Gibson, Dunn & Crutcher, Bert A. Lewis, Musick, Burrell & Ingebretsen, Philip C. Jones and James E. Ludlam for Respondents.

SPENCE, J.—These are appeals by both plaintiffs and defendants from judgments entered after rulings on demurrers in six separate actions, each of which was brought by one of plaintiff hospitals to recover certain taxes and assessments paid under protest in view of the recently enacted welfare exemption. (Cal. Const., art. XIII, § 1c; Rev. & Tax. Code, § 214.)

The California welfare exemption was operative for the first time in the tax year 1946-1947, and each of the plaintiffs duly filed its exemption claim. (Rev. & Tax. Code, §§ 254, 254.5.) Such exemption was granted by the taxing authorities in each case as to 90 to 95 per cent of the property of the respective hospitals, but denied as to the remaining 5 to 10 per cent on

the ground that such portions were not being used for exempt purposes. Accordingly, a tax was levied upon such unexempted portions and, in addition, a Los Angeles County Flood Control District assessment was made in every case against all of the respective hospitals' real property. The hospitals paid the taxes and assessments under protest, and then commenced these actions to recover such portions of those payments as the respective plaintiffs deemed contrary to the provisions of the welfare exemption law. The complaint in each case was divided into several causes of action, each of which causes presented a phase of the numerous points in dispute. A general demurrer as to each cause of action was filed in each case, and all of the cases were consolidated for the purpose of hearing.

The major portion of the property which plaintiffs claimed to be tax exempt, despite the adverse rulings of the taxing authorities, was that devoted to the housing of essential hospital personnel and to the conduct of nurses' training schools operated in connection with the hospital. The trial court agreed with plaintiffs' contentions as to these matters and overruled defendants' demurrer to the causes of action relating to the hospital property as thus used by plaintiffs. Likewise the trial court sustained the contentions of those plaintiffs herein who sought exemption of their real property from the flood control district assessments, and overruled the demurrer to the causes of action so premised. From the portions of the judgments entered in accordance with these rulings, defendants have appealed.

The following pieces of hospital property, however, were not deemed to be tax exempt by the trial court, and it sustained demurrers without leave to amend as to the causes of action relating thereto: buildings under construction to furnish housing for student nurses (counts two and four of the complaint in action L. A. No. 20615, involving the Hollywood Presbyterian Hospital); a tennis court maintained as a recreational facility for hospital employees, and a "thrift shop" operated for the sale of donated clothing, with the proceeds therefrom devoted to the upkeep of a free children's clinic (counts four and seven of the complaint in action L. A. No. 20616, involving plaintiff Lutheran Hospital Society of Southern California). Plaintiffs have filed appeals from the portions of the judgments accordingly entered. Also sustained without leave to amend was the demurrer to the fourth, sixth and eighth causes of action of plaintiff Monte Sano Foundation

(action L. A. No. 20614) relating to portions of a building leased for use as an X-ray laboratory or doctor's office, but said plaintiff has not filed an appeal from such adverse rulings.

Defendants do not dispute the status of any of these plaintiffs as an institution qualifying for the welfare exemption, so that the parties' opposing arguments center on these two main considerations: (1) the particular uses to which certain portions of the hospital property were put as determining the status—exempt or nonexempt—of such portions; and (2) the extension of the claimed exemption to include flood control district assessments levied on the real property of the several hospitals. Upon an analysis of the welfare exemption law, it appears (1) that except for its rulings on the tax status of the tennis court, the trial court was correct in its allowance or disallowance of exemption claims as to the several plaintiffs' *tax payments,* but (2) that it erred in construing the tax exemption to embrace the *assessment levies.*

Adopted at the general election of November 7, 1944, the relevant constitutional provision—article XIII, section 1c—reads as follows: "In addition to such exemptions as are now provided in this Constitution, the Legislature may exempt from taxation all or any portion of property used exclusively for religious, hospital or charitable purposes and owned by community chests, funds, foundations or corporations organized and operated for religious, hospital or charitable purposes, not conducted for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Pursuant to the authority thus granted, the Legislature in 1945 enacted section 214 of the Revenue and Taxation Code, providing as follows: "Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if:

"(1) The owner is not organized or operated for profit;

"(2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual;

"(3) The property is not used or operated by the owner or by any other person for profit regardless of the purposes to which the profit is devoted;

"(4) The property is not used or operated by the owner or

by any other person so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the distribution of profits, payment of excessive charges or compensations or the more advantageous pursuit of their business or profession;

''(5) The property is not used by the owner or members thereof for fraternal or lodge purposes, or for social club purposes except where such use is clearly incidental to a primary religious, hospital, scientific, or charitable purpose;

''(6) The property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes.

''The exemption provided for herein shall be known as the 'welfare exemption.' This exemption shall be in addition to any other exemption now provided by law. This section shall not be construed to enlarge the college exemption or to extend an exemption to property held by or used as an educational institution of less than collegiate grade.'' (Stats. 1945, ch. 241, § 1.)

Constitutional provisions and statutes granting exemption from taxation are strictly construed to the end that such concession will be neither enlarged nor extended beyond the plain meaning of the language employed. (*Cypress Lawn Cemetery Association* v. *San Francisco*, 211 Cal. 387, 390 [295 P. 813]; *San Francisco* v. *San Mateo*, 17 Cal.2d 814, 817 [112 P.2d 595].) In this regard, it is immaterial that the institutions in question may contribute to the public welfare and serve the interests of the state, for they, like other private owners of property, have the burden of showing that they clearly come within the terms of the exemption. (51 Am.Jur. § 633, p. 606; *Corporation of Sisters of Mercy* v. *Lane County*, 123 Ore. 144 [261 P. 694, 697].) This rule has been expressly recognized in this state in the application of the orphanage exemption. (Cal. Const., art. XIII, § 1½a; *Helping Hand Home* v. *San Diego*, 26 Cal.App.2d 452, 458-459 [78 P.2d 778].) Such rule of strict construction governing property tax exemptions is distinguished from the rule of liberal construction applying in the determination of exemption qualifications under social security and unemployment compensation acts. (*Scripps Memorial Hospital* v. *California*

*Emp. Com.*, 24 Cal.2d 669, 676-677 [151 P.2d 109, 155 A.L.R. 360] ; *Seaside Memorial Hospital* v. *California Emp. Com.*, 24 Cal.2d 681, 682 [151 P.2d 116].) Exemption provisions in statutes of the latter character will be liberally construed so as to effectuate their beneficent purpose to encourage and promote organizations seeking classification within the broad scope of the statutory language. (61 C.J. § 396, p. 394; see *Santa Fe Lodge No. 460* v. *Employment Security Com.*, 49 N.M. 149 [159 P.2d 312, 314-315].) This is not, however, the rule to be applied where exemption is claimed from general property taxation as provided in our state Constitution. (Art. XIII, § 1; *Watchtower Bible & Tract Soc., Inc.* v. *County of Los Angeles,* 30 Cal.2d 426, 429 [182 P.2d 178].)

But the rule of strict construction does not require that the narrowest possible meaning be given to words descriptive of the exemption, for a fair and reasonable interpretation must be made of all laws, with due regard for the ordinary acceptation of the language employed and the object sought to be accomplished thereby. (Cooley on Taxation, 4th ed., vol. 2, ch. 13, § 674, p. 1415; 51 Am.Jur. § 528, p. 531; *State ex rel. Spillers* v. *Johnston,* 214 Mo. 656 [113 S.W. 1083, 1084-1085] ; *Trustees of Phillips Exeter Academy* v. *Exeter,* 90 N.H. 472 [11 A.2d 569, 590-591].) As was said in the Spillers case, *supra*: ". . . strict construction must still be a reasonable construction . . ." On the basis then of a strict but reasonable construction of the welfare exemption law, the several points of dispute between the parties will be determined.

In determining what constitutes "property used exclusively for . . . hospital . . . purposes," it is appropriate first to note generally the nature of a "hospital." A fair and unchallenged description of the nature of such an institution is set forth in plaintiffs' combined brief as follows: "A hospital is primarily a service organization. It serves three groups: the patients, its doctors, and the public. It furnishes a place where the patient, whether poor or rich, can be treated under ideal conditions. It makes available room, special diet, X-ray, laboratory, surgery, and a multitude of other services and equipment now available through the advances of medical science. Essential to the administration of these techniques is the corps of highly-trained nurses and student nurses who are on duty twenty-four hours per day. In the large hospitals there are the interns and residents whose presence makes it possible for the hospital to do a better job. In addition, the

hospital . . . must have administration to see that its services function properly and are coordinated, and that patients are received and cared for regardless of the hour or the patient's condition. Nothing can be left to chance because a slip may mean a life or many lives. These facilities also stand ready to serve the community in times of epidemic or disaster.''

This description expresses in general terms the nature, functions, and purposes of a complete, modern hospital plant, which functions and purposes are more fully and more specifically alleged in the complaints on file herein and are admitted by the demurrers thereto. And as the constitutional amendment and statute under consideration were adopted and enacted in 1944 and 1945, respectively, it is entirely clear that the people and the Legislature had in mind such a complete, modern hospital plant rather than one consisting only of the minimum and indispensable facilities found in earlier hospitals which inadequately served their purposes many years ago.

It thus appears that under the rule of strict but reasonable construction, the phrase ''property used exclusively for . . . hospital . . . purposes'' should be held to include any property which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes; or, in other words, for any facility which is reasonably necessary for the fulfillment of a generally recognized function of a complete modern hospital. This test is fully supported by reason and the weight of authority, as evidenced by the cases hereinbefore and hereinafter cited. It should be recalled, however, that under the statute here in question, there are other conditions which must be met in order to entitle the property, or the particular portion thereof, to tax exemption. Such other conditions will be discussed as the occasion may require, but one of the main disputes between the parties concerns the question of whether certain portions of plaintiffs' properties met the requirement of being used exclusively for hospital purposes. Having thus declared in general terms the test to be used in determining that question, we shall proceed to apply that test, as well as any other conditions of the statute upon which defendants rely, to the particular portions of the hospitals' properties which are the subject of dispute.

The first question presented is whether the use of property by plaintiff hospitals for a nurses' training school and to provide housing for hospital interns, resident doctors, student nurses, and certain other alleged essential employees

required to be readily available in their effective operation constitutes a use exclusively for hospital purposes and so brings the property within the scope of the welfare tax exemption.

Unquestionably the maintenance of a school for training nurses is an important phase of the functions of a complete, modern hospital. If the major hospitals did not so provide, no student nurses would be available and resort would have to be made to registered nurses at much greater expense to the patients. Moreover, if hospitals did not train nurses in the requirements of the profession, eventually there would be no registered nurses, and obviously trained nurses are just as necessary as any other factor in the effective conduct of the general hospital facilities. Recognizing that the greater part of a nurse's training is in actual work with patients and ministering to their needs, our state law requires that "an accredited school of nursing" must be "affiliated or conducted in connection with one or more hospitals." (Bus. & Prof. Code, § 2786.) The character of such a school was considered in the case of *Lutheran Hospital Society* v. *County of Los Angeles,* 25 Cal.2d 254 [153 P.2d 341], where tax exemption of the school was sought on the ground that it was an "educational institution of collegiate grade." (Cal. Const., art XIII, § 1a.) In denying the exemption claim as the test therefor was defined by appropriate enactment (Rev. & Tax. Code, § 203), this court said at pages 257-258: "Under our Constitution . . . the words 'educational institution,' used in the ordinary and commonly accepted sense, do not include a general hospital which has, as an incident to its main purpose and usefulness, an educational feature. Furthermore, it is apparent that in the ordinary acceptation of the term, a hospital is not considered as an 'educational institution of collegiate grade' or as a 'college or seminary of learning.' In this field of legislation *the Legislature may well have concluded that the training of women as nurses is mainly in connection with and for the benefit of the hospital* (see article 2, ch. 6, div. II of the Business and Professions Code), *and that the property used for such purposes is entitled only to the classification accorded general hospital property devoted to nonprofit or charitable uses.* The record indicates that upon application to the Board of Equalization and a presentation of facts showing its use exclusively for charitable and nonprofit purposes, the plaintiff received a 50 per cent reduction

in the assessed valuation of all of its property including Larson Hall [where the nursing school was conducted]. Total exemption of the property of such institutions was rejected by the electors of the state in November, 1930, when it was proposed to add section 1⅝ to article XIII of the Constitution to accomplish that purpose. However, at the November, 1944, election, proposed section 1c of article XIII was added, making it permissive for the Legislature to exempt all or a portion of the properties of nonprofit hospital corporations. That section is, of course, prospective only." (Emphasis added.)

It is therefore apparent that there is no merit in defendants' argument that the allowance of the exemption claim on the nursing school property would involve the enlargement of the exemption in favor of an "educational institution" contrary to the express language of the statute extending the welfare exemption. (Rev. & Tax. Code, § 214.) Maintained as an integral part of the hospital operations, a nurses' training school has generally been regarded as a facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes, and therefore entitled to exemption. (*Hot Springs School Dist.* v. *Sisters of Mercy,* 84 Ark. 497 [106 S.W. 954]; *Lutheran Hospital Ass'n. of South Dakota* v. *Baker,* 40 S.D. 226 [167 N.W. 148, 151]; *Nuns of Third Order of St. Dominic* v. *Younkin,* 118 Kan. 554 [235 P. 869, 870]; see, also, *Reynolds Memorial Hosp.* v. *Marshall County Court,* 78 W.Va. 685 [90 S.E. 238, 240]; *Corporation of Sisters of Mercy* v. *Lane County, supra,* 123 Ore. 144 [261 P. 694, 697]; *Calais Hospital* v. *City of Calais,* 138 Me. 234 [24 A.2d 489, 490].) Though necessarily serving the private educational interest of the student nurses in attendance, property so used for a nurses' training school does not thereby lose its character as property "used exclusively for . . . hospital . . . purposes" within the scope of the welfare exemption law. (*Ibid; Sisters of Third Order of St. Francis* v. *Board of Review,* 231 Ill. 317 [83 N.E. 272, 274]; *Board of Review of Cook County* v. *Provident Hospital & Training School Ass'n.,* 233 Ill. 242 [84 N.E. 216, 217-218].) Rather, it is to be regarded simply as "an educational feature" of the hospital—"an incident to [the latter's] main purpose and usefulness." (*Lutheran Hospital Society* v. *County of Los Angeles, supra,* 25 Cal.2d 254, 257.)

The same reasoning applies with respect to the exemption of property used to provide a nurses' home as an incident to the operation of the hospital. It is a matter of common

knowledge that in many, if not most, hospitals, nurses and student nurses sleep in the hospital building or on premises nearby which have been acquired by the hospital for furnishing such accommodations. Manifestly, emergencies may arise from time to time during the night requiring immediate attention and which make it necessary to have more nursing personnel available than is actually on nighttime duty. Such situation can be met, as alleged by plaintiffs, only by providing housing facilities upon the hospital grounds for nurses, student nurses, and kindred aids. Typical of such living quarters were those furnished by plaintiff Cedars of Lebanon Hospital in "a building known as Lebanon Hall . . . attached to the main building of the hospital" and for which "each of the nurses" so accommodated "makes a payment of $10.00 per month" to the hospital. As set forth in the pleadings in these cases, the use of such property for such purposes is a use for a facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes, and the property so used should be held to be tax exempt. Such conclusion seems to be clearly in accord with the weight of authority. (Anno: 34 A.L.R. 674, 62 A.L.R. 336, 108 A.L.R. 295, *Nuns of Third Order of St. Dominic* v. *Younkin, supra,* 118 Kan. 554 [235 P. 869, 870] ; *Aultman Hospital Ass'n.* v. *Evatt,* 140 Ohio St. 114 [42 N.E.2d 646, 647] ; see, also, *Corporation of Sisters of Mercy* v. *Lane County, supra,* 123 Ore. 144 [261 P. 694, 697] ; *Appeal of Parmentier,* 139 Pa. Super. 27 [11 A.2d 690, 693] ; *Dougherty* v. *City of Philadelphia,* 139 Pa.Super. 37 [11 A.2d 695, 697].)

Defendants argue that a building which serves as a residence for nurses should not be deemed property "used *exclusively* for . . . hospital . . . purposes." (*Johnson* v. *Mississippi Baptist Hospital,* 140 Miss. 485 [106 So. 1].) The cited case did take such narrow view of the statute there involved and the tax exemption was denied. This is the only case, insofar as citation by counsel or independent research has disclosed, where a like decision has been reached in distinguishing the tax status of such portion of hospital property. Moreover, it no longer is the law even in Mississippi since the express amendment of the pertinent exemption statute to include "nurses' homes." (*Board of Supervisors* v. *Vicksburg Hospital,* 173 Miss. 805 [163 So. 382, 384] ; *Board of Sup'rs.* v. *Jackson Hospital Benev. Ass'n.,* 180 Miss. 129 [177 So. 27, 28] ; *Rush Hospital Benev. Ass'n.* v. *Board*

*of Sup'rs.*, 187 Miss. 204 [192 So. 829, 831].) Defendants' single reference in this regard requires no further discussion as it is wholly contrary to the prevailing view. (See anno. 62 A.L.R. 336.)

It is of no importance here that the Legislature in 1947, upon enacting a new body of law dealing with hospital survey and construction (Health & Saf. Code, ch. 3, §§ 430-435.7; Stats. 1947, ch. 327, § 2, p. 882) defined a hospital to include "related facilities such as . . . nurses' home and training facilities." (Health & Saf. Code, § 430.4.) Defendants urge that since the Legislature there deemed it proper to so define the scope of the term, the word "hospital" would not otherwise have such broad meaning. But aside from the fact that wholly unrelated, subsequent legislation would have no particular bearing on the questions before us, the cited definition simply accords with the commonly accepted understanding of the word "hospital" as used in the ordinary, and not broad sense. (See *Lutheran Hospital Society* v. *County of Los Angeles, supra,* 25 Cal.2d 254, 257.) It has been so construed here. Accordingly, plaintiffs' claims are well taken with respect to the nature of the facilities of a nursing school and nurses' home as constituting property "used exclusively for . . . hospital . . . purposes" within the contemplation of the welfare exemption law.

The same considerations apply with respect to the exemption of hospital property used to provide housing facilities for interns, resident doctors, superintendents, and other members of the hospital staff—that the administration of the affairs of the institution requires that certain personnel and employees be located on or near its grounds to the end that its operation may be efficiently conducted and supervised, and that emergency cases may be effectively handled as they arise. Since it is commonly expected by the public that admittance to a hospital may be had at any hour of the day or night, such 24-hour service necessarily involves the presence at all times of adequate help and trained personnel. In this connection, reference need only be made to the pertinent allegations of the complaint filed by plaintiff Lutheran Hospital Society of Southern California (L. A. No. 20616), relative to its two hospital plants, the "California Hospital" and the "Santa Monica Hospital," and admitted by defendants' demurrer:

"That plaintiff receives patients at all hours of the day or night and in connection therewith must have available employees to receive these patients, enter them in the hospital

record, make up their rooms, attend to their personal effects, clean up after emergency operations, do the clean-up and maintenance work around the hospital at such times that it will not interfere with the essential services of the hospital. To do part of this work, The California Hospital employs 84 housekeeping employees, including porters and orderlies, of whom 26 are housed by it, and The Santa Monica Hospital employs 30 housekeeping employees, including porters and orderlies, of whom 2 are housed by it. In addition plaintiff employs a large body of employees doing what it classifies administration work, which group includes clerks, bookkeepers, stenographers, telephone operators, engineers and the like. Of these The California Hospital employs 263 and houses 26, and The Santa Monica Hospital employs 104 and houses 5.

"That plaintiff operates its dietary department upon a split-shift (four hours' service during the day and four hours' during the night). That if plaintiff operated its said personnel on straight eight-hour shifts, the unions to which such personnel belong would require plaintiff to hire more personnel than are required under the split-shift plan. That plaintiff thereby effects a substantial saving by employing the said personnel on a split-shift basis. That it is difficult to obtain competent personnel to work on a split-shift basis unless they are actually housed in the immediate vicinity since a split-shift requires them to be at the hospital for two different periods during each 24 hours. That the morning shift in the dietary department starts at between 4:00 o'clock and 6:00 o'clock at a time when public transportation is not readily available. That plaintiff houses 57 of its 67 dietary employees employed at The California Hospital and 2 of its 54 employees employed at The Santa Monica Hospital.

"That plaintiff does not employ a night-shift engineer at The Santa Monica Hospital, but furnishes its two daytime engineers with housing on its premises so that they will be readily available in case of emergency to service the pressure boiler maintained by plaintiff to furnish steam to its sterilizers as well as general heating service."

As the welfare exemption law has been heretofore discussed, "property used exclusively for . . . hospital . . . purposes" would comprehend not only the buildings and grounds actually used for housing the patients in their treatment and care, but also such adjacent or nearby buildings used for housing such persons as may be essential for the efficient oper-

ation of the hospital. Here again, as appears from plaintiffs' allegations, the facilities were incidental to and reasonably necessary for the accomplishment of hospital purposes and were therefore tax exempt. (See *County of Hennepin* v. *Brotherhood of Gethsemane*, 27 Minn. 460 [8 N.W. 595, 596, 38 Am.Rep. 298]; *Corporation of Sisters of Mercy* v. *Lane County, supra,* 123 Ore. 144 [261 P. 694, 700]; *Appeal of Parmentier, supra,* 139 Pa.Super. 27 [11 A.2d 690, 693]; *Calais Hospital* v. *City of Calais, supra,* 138 Me. 234 [24 A.2d 489, 490].)

The next question to be determined is whether buildings under construction on the tax date and intended for use in the housing of student nurses are within the welfare exemption. This issue relates to counts two and four of the complaint in action L. A. No. 20615, relating to the Hollywood Presbyterian Hospital. It appears from the pleading that "on the first Monday of March, 1946," the building on each of the two pieces of property involved "was approximately eighty-five percent (85%) completed," was "designed to be used exclusively as a dormitory and residence for student nurses attending [the hospital's] School of Nursing," was "placed in use" for the designated purposes "on or about July 1, 1946," and "has been so used ever since said date." The trial court sustained defendants' demurrer to these two counts, thus distinguishing between (1) buildings completed and "used exclusively for . . . hospital . . . purposes" and (2) buildings so intended for use but still in the construction stage on the day determinative of their tax status. Such distinction appears to have been properly made.

As above quoted, the pertinent constitutional provision (Art. XIII, § 1c) and the implementing statute (Rev. & Tax. Code, § 214) unequivocally require that the property be "used" for the enumerated purposes. Such express limitation, making *use* the focal point of consideration, contemplates *actual use* as differentiated from an *intention to use* the property in a designated manner. It has been generally so held in the construction of kindred exemption laws in other jurisdictions (see anno. 34 A.L.R. 671, 62 A.L.R. 335, 108 A.L.R. 294) although, as indicated in the cited annotations, there are cases to the contrary. This point of interpretation has been adjudicated in this state in *Southern California Telephone Co.* v. *Los Angeles County,* 212 Cal. 121 [298 P. 9], concerning the taxation of a building under construction belonging to the telephone company which if "used exclusively

in the operation of their business'' was subject to assessment by the state board of equalization as "operative property," and immune from county taxation. It was there held that under no construction of the language—whether strictly construed as in cases "dealing with tax exemptions" where the courts have "interpreted the words 'used exclusively' to require an actual use" or liberally construed as in the instant situation of a gross receipts tax "which is not an exemption"—could it "possibly include property which is neither used nor available for use in such business." (P. 126.) The same observation may well be made in this case for regardless of the rule of strict construction here applicable, it would appear that under no theory of construction could a building in the course of erection be viewed as being used for any purpose.

It is argued that some effect should be given to these factors: that the exemption here is sought for property on which considerable progress had already been made with the building, that the work was being diligently prosecuted, and upon its completion it was in fact used pursuant to its design for an exempt purpose—as distinguished from a claim made with respect to vacant land on which it is the intention to start construction at some future date. But these considerations attesting to the exercise of the institution's good faith in carrying out its building program are wholly immaterial under the welfare exemption law, where the language plainly makes use of the property the basis of the exemption, and manifestly an incompleted building cannot meet that condition. Such matters of bona fide intention as well as acts on the part of the qualifying institution have been recognized in decisions by courts which are committed to the doctrine of liberal construction of tax exemption statutes. (*El Jebel Shrine Ass'n.* v. *McGlone*, 93 Colo. 334 [26 P.2d 108, 109]; *McGlone* v. *First Baptist Church of Denver*, 97 Colo. 427 [50 P.2d 547, 548-549]; *Trustees of Property of Protestant Episcopal Church in New Mexico* v. *State Tax Commission*, 39 N.M. 419 [48 P.2d 786, 787].) But the reasoning of such decisions is without force under the rule of strict construction followed in this state and in most of the other states. This is not a case involving repairs, restoration or enlargement of a hospital or essential hospital facilities where the construction project assumes the character which had previously attached to the property for exemption purposes pursuant

to its actual use, but rather here the problem concerns new building on property which had not yet acquired a definite character, and would not until completed and used for the designated hospital purposes. (*Dougherty* v. *City of Philadelphia*, 112 Pa.Super. 570 [172 A. 177, 180].) Accordingly, the trial court properly denied the exemption on the buildings here under construction on the determinative tax date.

The next matter to be considered is whether property used for the maintenance of a tennis court as a limited recreational facility for hospital employees—student nurses, interns and residents—comes within the scope of the welfare exemption law. This issue relates to count four of the complaint in action L.A. No. 20616, involving plaintiff Lutheran Hospital Society of Southern California. The trial court denied the exemption upon sustaining defendants' demurrer to said count. That ruling cannot be sustained.

The tennis court is located on the hospital grounds and is used as an outdoor recreational facility for the hospital personnel as above mentioned. In its complaint plaintiff alleged that ''To qualify for the training of interns or residents under the rules of the American Medical Association Council on Medical Education and Hospitals, a hospital must provide for the health, care, housing, recreation and food for its residents and interns.'' There is no dispute of the fact that the nature and type of this recreational facility is of a reasonable character both as to cost and size in relationship to the cost and size of the hospital.

It appears that the exempt status of recreational facilities maintained by a hospital has been considered in but two cases, and in each instance the exemption was sustained: (1) *Corporation of Sisters of Mercy* v. *Lane County, supra*, 123 Ore. 144 [261 P. 694, 697], wherein a tennis court used ''to afford recreation for the pupil nurses and employees of the hospital, and sometimes the patients'' was held tax exempt as part of the hospital property; and (2) *State* v. *Academy of Our Lady of Lourdes*, 221 Minn. 227 [21 N.W.2d 617, 618], wherein the property of a hospital, including ''a swimming pool [and] recreation hall,'' was likewise held tax exempt. Defendants argue that these adjudications should be distinguished because in the first case the tennis court was ''sometimes used by patients,'' and in the second case ''it is not shown that [the recreational facilities] were not maintained primarily for the use of patients and they were not considered separately from the rest of the hospital.'' But

these considerations have no force here under the facts presented and the test above set forth, as such use of the property was for a facility which was incidental to and reasonably necessary for the accomplishment of hospital purposes, regardless of whether it was used to meet the recreational needs of patients or of essential personnel, or both. In other words, the tennis court was reasonably necessary for the fulfillment of a generally recognized function of a complete, modern hospital. Perhaps it may not be said that such recreational facility, in its use by either patients or essential personnel, is indispensable to the accomplishment of hospital purposes; but absolute indispensability does not commend itself as an appropriate test, and it finds no support in the authorities. Accordingly, we conclude that the trial court erred in denying the exemption claim with respect to the tennis court as a reasonable recreational facility on the hospital grounds.

But hospital property used to house a "thrift shop," as that project in count seven of the complaint in action L. A. No. 20616, involving plaintiff Lutheran Hospital Society of Southern California, is not entitled to the benefit of the tax exemption, and the trial court correctly so held in sustaining defendants' demurrer to that count. It appears that the "thrift shop" is located on the lower floor of the hospital building, "where donated clothing and furnishing are sold" and the "entire proceeds . . . are devoted to the maintenance of the Free Children's Clinic maintained jointly by the [hospital] and [a Community Chest] agency . . . deemed by the [hospital's] board of directors to be a charitable use." But such enterprise, laudable as its purpose manifests it to be, cannot escape classification as an independent undertaking to raise revenue, and it cannot be said to have been incidental to and reasonably necessary for the accomplishment of hospital purposes. In truth it was conducted solely for revenue purposes as distinguished from hospital purposes. While the profit or gain derived from the operation of the thrift shop benefited the hospital in providing support for its clinic, such consideration must be viewed in the light of the welfare exemption law's express proviso that "property used exclusively . . . for hospital . . . or charitable purposes is exempt from taxation if . . . the property is not used or operated by the owner or by any other person for *profit* regardless of the purposes to which the profit is devoted." (Rev. & Tax. Code, § 214, subd. (3) ; emphasis added.) Such

plain language prohibits the allowance of the exemption claim here in question.

The quoted profit proviso emphasizes the fundamental condition of the welfare exemption as premised upon *use of the property* for an exempt purpose. As defendants state, such qualifying limitation is well illustrated in *Cypress Lawn Cemetery Association* v. *San Francisco, supra,* 211 Cal. 387, involving the construction of the exemption allowed (1) "all property used or held exclusively" for burial grounds or (2) "for the care, maintenance or upkeep" thereof, "except as used or held for profit." (Const., art. XIII, § 1b.) Plaintiff, a cemetery association, had invested certain trust moneys in a hotel, which it then operated. It claimed that the hotel came within the second provision in classification of the exempt property because "the entire income derived from the hotel [was] devoted exclusively to the care and maintenance of" the cemetery. (P. 390.) In rejecting this claim, the court stated at page 391: "While the application of the income derived from the operation of the hotel undoubtedly assists, and perhaps materially so, in the proper maintenance of the nontaxable burial grounds, and lends value thereto, this alone should not work an exemption of the hotel proper. (Citing authority.) *Had it been the intention to grant the exemption upon the basis of the use of the income from property rather than upon the use of the property itself,* such intention could, and probably would, have been directly and positively expressed." (Emphasis added.) So here the use of the *income* from the "thrift shop" for "hospital . . . or charitable purposes" is of no significance when the determinative prerequisite is "the use of the property itself"—a condition made doubly certain under the terms of the statute's exception expressly denying exemption to the property if "used or operated . . . for profit regardless of the purposes to which the profit is devoted." (Rev. & Tax. Code, § 214, subd. (3).) The case of *San Gabriel Cemetery Association* v. *County of Los Angeles,* 49 Cal.App.2d 624 [122 P.2d 330], cited by the hospital as supporting its exemption claim, is not in point, for there the alleged profit or gain, used for the upkeep of the cemetery, arose from "the sale of burial space at a price in excess of its cost"—the very activity constituting the basis of the cemetery exemption and so not regarded as an operation for "profit" within the meaning of the exemption qualification.

There now remains for consideration the final ques-

tion of whether the exemption from taxation granted by the welfare exemption law extends to a levy imposed under authority of the Los Angeles County Flood Control Act. (Stats. 1915, ch. 755, p. 1502; Deering's Gen. Laws, Act 4463.) The trial court held that it did, and overruled defendants' demurrers to the causes of action presented by the respective plaintiff hospitals claiming the benefits of such exemption. Such ruling cannot be sustained.

The constitutionality of the above-mentioned flood control statute was assailed in the case of *Los Angeles County Flood Control District* v. *Hamilton,* 177 Cal. 119 [169 P. 1028], and in sustaining its validity, this court declared that though the act used the expression ''tax,'' it in fact conferred authority merely to levy an assessment against the real property of the district on the basis of benefits to be received and the Legislature itself had determined the question of these benefits when it authorized the imposition of such levy on the basis of the assessed valuation of the real property for general taxation purposes. Following this decision that the flood control district levy is a special assessment, and not a tax, is a long line of additional cases: *Inglewood* v. *County of Los Angeles,* 207 Cal. 697, 702-703 [280 P. 360]; *Los Angeles County Flood Control Dist.* v. *Wright,* 213 Cal. 335, 338 [2 P.2d 168]; *Los Angeles* v. *Los Angeles County Flood Control Dist.,* 11 Cal.2d 395, 404 [80 P.2d 479]; *Los Angeles Ry. Corp.* v. *Los Angeles County Flood Control Dist.,* 78 Cal.App. 173, 180-181 [248 P. 532]; *Southern Pacific R. R. Co.,* v. *Stibbens,* 103 Cal.App. 664, 676 [285 P. 374]; *Northwestern Mutual Life Ins. Co.* v. *State Board of Equalization,* 73 Cal.App.2d 548, 553 [166 P.2d 917]; see, also, *Chesebro* v. *Los Angeles County Flood Control Dist.,* 306 U.S. 459, 465-466 [59 S.Ct. 622, 83 L.Ed. 921].)

It is well settled that exemptions of private property from taxation do not extend to special assessments, levied upon the basis of equivalent benefit, unless specifically so provided. (Cooley on Taxation, 4th ed., vol. 2, ch. 13, § 689, p. 1444; 48 Am.Jur. § 80, p. 636; 24 Cal.Jur. § 80, p. 97; *Hollywood Cemetery Ass'n.* v. *Powell,* 210 Cal. 121, 135 [291 P. 397, 71 A.L.R. 310], and cases there cited.) This rule is generally applied to charitable institutions. (48 Am.Jur. § 97, p. 647; anno. 34 A.L.R. 687.) To avoid application of this rule here, plaintiff hospitals urge that the flood control district levy is an ad valorem rather than a specific lien type of special assessment, and as thus distinguished in type, the method pre-

scribed for its collection is so much like that followed in the collection of a tax that it should be treated as a tax within the meaning of the welfare exemption law. But such asserted distinction is not a determinative factor, for the character of a levy as a tax or an assessment depends upon whether it is exacted in compensation for a benefit to the property upon which it is made a charge, and its classification is not affected by the method adopted for collection. If the welfare exemption law were intended to include special assessments, provision therefor should have been made in explicit terms, pursuant to the rule of strict construction as generally held applicable in tax exemption cases. Moreover, many years before the adoption of the welfare exemption law, the flood control district levy had been construed as a special assessment (*Los Angeles County Flood Control Dist.* v. *Hamilton*, (1917) *supra*, 177 Cal. 119, 129) and not covered by a general exemption from taxes (*Los Angeles Ry. Corp.* v. *Los Angeles County Flood Control Dist.*, (1926) *supra*, 78 Cal.App. 173, 181; *Southern Pacific R. R. Co.* v. *Stibbens*, (1930) *supra*, 103 Cal.App. 664, 676-677). In view of such judicial construction as to the character of the levy in question and its exclusion from the scope of a tax exemption, the conclusion inescapably follows that the benefit of the "exemption from taxation" accorded by the welfare exemption law was intended to apply within the limits of the cited decisions rather than in any enlarged sense. (*In re Nowak*, 184 Cal. 701, 705 [195 P. 402]; *City of Long Beach* v. *Payne*, 3 Cal.2d 184, 191 [44 P.2d 305].) Accordingly, the exemption claims as to the flood control district assessments cannot here prevail.

The only hospital which did not seek recovery of the flood control district assessment was plaintiff Queen of Angels Hospital in action L. A. No. 20611. The trial court correctly disposed of all issues presented in that case, and the judgment should be affirmed. In all the other cases the trial court correctly disposed of some of the issues and incorrectly disposed of others, as above indicated. It therefore appears appropriate to reverse with directions the judgments in these other cases, which judgments made certain all-inclusive adjudications regarding exemptions and also awarded recoveries in a single sum as against each defendant.

The judgment in *Queen of Angels Hospital* v. *County of Los Angeles*, L. A. No. 20611, is affirmed. The judgments which are the subjects of the other appeals are, and each of

them is, reversed with directions to the trial court to proceed in accordance with the views herein expressed. Plaintiff in *Queen of Angels Hospital* v. *County of Los Angeles,* L. A. No. 20611, will recover its costs therein, but the parties will bear their own costs on the other appeals.

Gibson, C. J., Edmonds, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J.—In concurring I call special attention to the fact that in each of these cases the complaint alleges, and defendants solely for the purposes of their demurrers admit, that the property is not used or operated for profit or to benefit any person in the more advantageous pursuit of his business or profession.

Section 214 of the Revenue and Taxation Code provides that "Property used exclusively for . . . hospital . . . purposes owned and operated by . . . corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if: . . . (3) The property is not used or operated *by the owner or by any other person for profit regardless of the purposes to which the profit is devoted;* (4) The property is not used or operated by the owner or by any other person *so as to benefit any officer* . . . member, employee . . . *or any other person, through* the distribution of profits, payment of excessive charges or compensations or *the more advantageous pursuit of their business or profession."* (Italics added.)

There are no allegations in the complaints which would show that any of the hospitals charges paying patients more per day for the room, board and services furnished those patients than the cost to the hospital of furnishing such room, board and services. If some rooms are intentionally and consistently rented to paying patients at more than cost this operation, in my view, comes within the express language of the above quoted statute (use or operation "for profit regardless of the purposes to which the profit is devoted") and, hence, the hospital property so used does not qualify for exemption from taxation.

It is also to be noted that there are no allegations in the complaints here which would show that, with respect to the admission of patients who are charged fees by their doctors, the hospitals selectively admit only the patients of staff doctors. If the hospitals have such an admission policy, it

would seem that they are being operated "so as to benefit" the staff doctors in the "more advantageous pursuit of their . . . profession" (Rev. & Tax. Code, § 214, par. (4)), and hence, by the express standard set by the Legislature such hospitals would not qualify for the exemption.

It may be noted that a view similar to that which I here express was taken by the trial court in the Monte Sano Foundation case (L. A. 20614), p. 729, with reference to an area in its hospital building which is leased to a physician who uses it exclusively for essential hospital purposes but who is also benefited in his practice by the lease arrangement. The physician, a roentgenologist, furnishes the hospital's patients with X-ray services and charges them for such services. It would appear that plaintiff Monte Sano agrees with the view that this leased area is being used for "the more advantageous pursuit" of the lessee-doctor's profession and, therefore, does not come within the tax exemption of section 214, for the plaintiff did not appeal from the portion of the judgment against it, after demurrer sustained without leave to amend, on the cause of action (fourth) involving such leased area.

SHENK, J., Concurring and Dissenting.—I concur in the opinion and judgment as to the Los Angeles County Flood Control District tax; and as to the general tax insofar as the result is tax exemption. But I am not in agreement with those portions of the opinion which lead to nonexemption from the general tax. In the latter are included the thrift shop and the buildings under construction. In my opinion the proper application of the law should result in tax exemption of these items from the general tax.

The rule of construction to discover a tax exemption applies only until the meaning of the language makes it clear that an exemption was expressed. When that meaning is found in the language employed the rule is of no further use. Since the electorate and the Legislature used express words of exemption (Const., art. XIII, § 1c; Rev. & Tax. Code, § 214), there is here no need for the rule of construction to discover whether an exemption was intended. The task from that point is to apply the express language of exemption in accordance with the intent appearing from the constitutional and statutory provisions and other relevant factors.

It is obvious that the welfare exemption is designed to serve both social and economic ends. The electors of the state must be deemed to have been aware of the need of the services

afforded by the designated organizations when carried on impartially and without self-interest. Implicit in the legislation is the knowledge that the maintenance of the facilities and the dispensation of the services as a result of private contributions of funds and personal effort become less of a burden on the taxpaying public than would be the cost under public ownership and control. The lessened cost of operation by the relief from taxation of such organizations also renders the services more widely available to those for whom they are intended. The resulting cost reduction must have been considered a greater benefit to the people than decreased taxes if the properties were not exempt.

As the majority opinion points out, many operations involved are incidental to a hospital use but are important and necessary to the conduct of each organization and without which its function as a hospital would be severely handicapped. Considering the social and economic ends to be served, the governing policy should be to so apply the express exemption as to bring about fully the legislative objectives. To do so requires that the words ''use'' and ''purposes'' be given their separate meanings. The exemption could have been afforded only when the property was devoted solely to a hospital *use*. But the wider compass in the expression of use for hospital *purposes* should include every purpose deemed essential to operation as a hospital. In this aspect the determination of necessity by the owners and operators should be given proper weight. Therefore, although a property might not be devoted to a hospital use, if it is essential for a hospital or other exempt purpose as distinguished from a use foreign to such purpose, it should be considered to be used exclusively for the exempt purpose within the meaning of the constitutional and legislative provisions. The majority opinion appropriately includes within the use for hospital purposes a training school for nurses, residence facilities for nurses, doctors and employees, and health and recreational facilities. But there has been omitted the thrift shop conducted by one of the hospitals and the buildings under construction intended for use as housing for student nurses attending the school of nursing.

## The ''Thrift Shop''

The so-called ''thrift shop'' is located in a portion of a hospital building otherwise exempt. Here donations of personal property are received and where not usable as donated

they are converted into cash and used on behalf of the Free Children's Clinic maintained jointly by the hospital and the Los Angeles Community Chest. Nothing is purchased for resale. It is not a commercial enterprise, and there is no true profit-making objective involved. These charitable activities are common and are plainly distinguishable on the facts from *Cypress Lawn Cemetery Association* v. *San Francisco*, 211 Cal. 387 [295 P. 813]. There property of the plaintiff "except as used or held for profit" was tax exempt. A hotel, the proceeds from the operation of which were devoted to the upkeep of the cemetery property, was owned and operated by the plaintiff. It was decided that the hotel property was not exempt from taxation. The case suggests a fair test of when property is used or operated for profit "regardless of the purposes to which the profit is devoted" under the statute here involved. If, as in the cemetery case, the property is held primarily as investment property to derive a profit and has no connection with the hospital or charitable use, it is not used for hospital or charitable purposes although the profit therefrom is applied to maintain the facilities devoted to those purposes. It was such investment property as was intended to be omitted from the exemption provisions. The Legislature no doubt considered the possibility that, in the absence of language of express exclusion, the courts might conclude that investment property was exempted when all the proceeds from its operation were devoted to the hospital or other designated purpose. But the thrift shop is not held as investment property nor is it pursued as a commercial venture. There is here a direct connection with the charitable purpose of receiving contributions for distribution in the same or converted form to the children applying for free assistance at the clinic. (*Cf. Missouri Goodwill Industries* v. *Gruner*, 357 Mo. 647 [210 S.W.2d 38].) Every case obviously must be determined on its own facts. And in this instance it seems to me that the alleged charitable use of the property far outweighs any possible attribute of commerce for the reason that contributions are necessarily converted to usable liquid assets in their charitable application. Here the result should be the same as though money contributions had been offered and accepted in the first instance.

### BUILDINGS UNDER CONSTRUCTION

As to the lots and the buildings thereon under construction for use as student nurse housing it is necessary to consider

whether during construction they were "property used exclusively for . . . hospital purposes." I do not agree with the conclusion that the question has been determined in this state adversely to the claim of exemption by the case of *Southern California Telephone Co. v. Los Angeles County,* 212 Cal. 121 [298 P. 9]. There was no question of exemption from taxation in that case. The court pointed out that public utilities were not exempt from property taxes. If the property in question was "operative" property, it fell under the substituted state tax on gross receipts. If nonoperative it was subject to taxation by the county. It was decided that the property was nonoperative and therefore taxable by the county. The conclusion has no bearing on the present question of the application of provisions for tax exemption. In arriving at the holding that the exemption does not apply to property under construction it is conceded that there are cases to the contrary. The reasoning of those cases to me is persuasive. In the application of such exemptions, construction for a proper hospital purpose is a use for such purpose. Expansion is necessary to keep abreast of increased public need due to population and other changes. Under modern conditions, neither a hospital nor any other welfare service can remain static. If the trust funds, contributions and earnings are tax exempt, no good reason requires a denial of exemption because of the temporary use of the assets to construction purposes, where the property in its converted state is also exempt. In *El Jebel Shrine Assn.* v. *McGlone,* 93 Colo. 334 [26 P.2d 108], the constitution and statute exempted lots and buildings thereon if used solely and exclusively for religious or charitable purposes. It was held that a lot with the foundation thereon for a building to be used for charitable purposes was exempt. Among other cases the court followed *New England Hospital* v. *Boston,* 113 Mass. 518. There vacant lots were held exempt where construction plans were diligently being pursued in good faith. (See to similar effect *McGlone* v. *First Baptist Church of Denver,* 97 Colo. 427 [50 P.2d 547]; *Trinity Church* v. *Boston,* 118 Mass. 164, 166.) In a case holding to the contrary (*Boston Soc.* v. *Boston,* 129 Mass. 178), vacant land was held taxable because the only intent appearing was that at some indefinite time in the future it was to be improved for the required purpose. *In re Miriam Osborn Memorial Home Assn.,* 140 N.Y.S. 786, also involved real property not yet in actual use but suitable buildings were in

good faith contemplated, plans discussed, and funds in existence for the purpose. Since the property was shown to be essential to the comprehensive plan of development for charitable purposes, it was held to be exempt. *In re Children's Hospital* (1923), 82 Pa.Super. 196, the exemption statute provided that the entire revenue of the charity should be used among other things for the necessary increase of grounds and buildings thereon. It was held that an addition in the course of construction was exempt. *Dougherty* v. *Philadelphia* (1934), 112 Pa.Super. 570 [172 A. 177], involved two properties, neither of which was in actual use. One school building was being demolished, while the replacement building was still under construction. The exemption was applied to the former. The court held the property entitled to one exemption. Neither property was then in condition for actual use, but the exemption was nevertheless applied.

The statement in 26 Ruling Case Law, Taxation, section 283, was accepted as the general rule in *Trustees of Property of Protestant Episcopal Church in New Mexico* v. *State Tax Comm.*, 39 N.M. 419 [48 P.2d 786], namely: ''When a religious society has bought a lot for the purpose of erecting a church thereon, and has begun and is prosecuting with all reasonable diligence the erection of the building, the lot is generally held to be exempt from taxation.'' (See also *Osteopathic Hospital of Maine* v. *Portland,* 139 Me. 24 [26 A.2d 641, 644] ; *Foresee* v. *Board of Directors of Bergman Special School Dist.* (1948), 213 Ark. 569 [211 S.W.2d 432] ; *State* v. *Second Church of Christ, Scientist,* 185 Minn. 242 [240 N.W. 532] ; *Village of Hibbing* v. *Commissioner of Taxation* (1944), 217 Minn. 528 [14 N.W.2d 923, 156 A.L.R. 1294] ; *Commonwealth* v. *First Christian Church of Louisville,* 169 Ky. 410 [183 S.W. 943, Ann.Cas. 1918B 525].)

It is no answer to say that in such cases the policy was one of liberal construction. Under the ''strict but reasonable'' formula announced the result should be the same. When an exemption appears under that rule of construction, the ''reasonable'' application of the exemption language in my opinion requires a result in conformity with the general rule accepted in the foregoing cases.